STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald A. HANSFORD, Defendant-Appellant.

Supreme Court

*No. 97–0885–CR. Oral argument May 27, 1998.—Decided June 19, 1998.*

(On certification from the court of appeals.)

(Also reported in 580 N.W.2d 171.)

For the defendant-appellant there were briefs and oral argument by *Suzanne Hagopian*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Sharon Ruhly*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

Amicus curiae brief was filed by *Craig W. Albee* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee for the Wisconsin Association of Criminal Defense Lawyers.

¶ 1. N. PATRICK CROOKS, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § 809.61(1995–96).[1] The issue certified to this court is whether Wis. Stat. § 756.096(3)(am),[2] which provides for six-person juries in criminal misdemeanor cases, violates art. I, § 7[3] or art. I, § 5[4] of the Wisconsin Constitution. A second issue, which was not certified to this court but was

---

[1] All references to the Wisconsin Statutes will be to the 1995–96 volume of the statutes unless otherwise noted.

[2] Wisconsin Stat. § 756.096(3)(am) states: "A jury in a misdemeanor case shall consist of 6 persons."

The legislature enacted Wis. Stat. § 756.096(3)(am) pursuant to 1995 Wisconsin Act 427. Although § 756.096(3)(am) has been repealed, the language providing for six-person juries in misdemeanor cases is still in effect and is now codified in Wis. Stat. § 756.06(2)(b) (1997–98). *See* WI Order 97–2 (S. Ct. Order 96–08).

[3] Article I, § 7 of the Wisconsin Constitution states:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

[4] Article I, § 5 of the Wisconsin Constitution states:

The right to a jury trial shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy; but a jury trial may be waived by the parties in all cases in the manner prescribed by law. Provided, however, that the legislature may, from time to time, by statute, provide that a valid verdict, in civil

raised by the Defendant in his brief to the court of appeals, is whether the circuit court committed reversible error in denying the Defendant's request for a jury instruction on a common law right to change his name, because the circuit court concluded that such right is not recognized in Wisconsin.[5]

¶ 2. Upon review, we conclude that Wis. Stat. § 756.096(3)(am) violates art. I, § 7 of the Wisconsin Constitution which guarantees the right to a jury of 12 persons, as recognized by the common law as it existed at the time the Wisconsin Constitution was adopted. *See* Wis. Const. art. XIV, § 13.[6] Accordingly, we reverse the circuit court's judgment convicting the Defendant of obstructing an officer. We also reverse the Defendant's conviction for bail jumping, since it was premised solely upon the circuit court's finding that the jury found the Defendant guilty of obstructing an officer. Because we conclude that § 756.096(3)(am) violates art. I, § 7 of the Wisconsin Constitution, it is not necessary for us to determine whether the circuit court committed reversible error by denying the Defendant's request for a jury instruction regarding a common law name change. However, for purposes of clarifying Wisconsin's common law, we further conclude that Wisconsin does recognize a common law right to

---

cases, may be based on the votes of a specified number of the jury, not less than five-sixths thereof.

[5] In our order accepting this case on certification from the court of appeals, we stated that "the appeal is accepted for consideration of all issues raised before the court of appeals."

[6] Article XIV, § 13 of the Wisconsin Constitution states:

Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature.

change one's name through consistent and continuous use, as long as the change is not effected for a fraudulent purpose.

I.

¶ 3. The facts relevant to our review are not in dispute. On June 21, 1996, the Defendant and Troy Ullman (Ullman) had an altercation at a bar. As a result, Ullman called the Madison Police Department and filed a report. Eight days later, Ullman saw the Defendant at the same bar and again called the police. When the police officer arrived, Ullman pointed out the Defendant and informed the officer that the Defendant frequently used the name Bryan Storm. The uniformed officer approached the Defendant and asked him whether he was Ronald Hansford. The Defendant replied, "No," and said his name was Bryan. The officer placed the Defendant under arrest, and repeatedly asked the Defendant his name. The Defendant continued to state that his name was Bryan Storm. The Defendant was subsequently transported to jail, where he was presented with a picture of Ronald Hansford. The Defendant acknowledged that it was a picture of himself, but did not state that his name was Ronald Hansford. At the time of his arrest, the Defendant had been previously released on bail for charges of theft and obstructing an officer pending in Dane County.

¶ 4. On July 1, 1996, the State of Wisconsin (State) charged the Defendant with three Class A misdemeanor offenses: battery contrary to Wis. Stat. § 940.19(1); obstructing an officer contrary to Wis. Stat. § 946.41(1); and bail jumping contrary to Wis. Stat. § 946.49(1)(a). The Defendant filed a motion to sever the bail jumping charge from the charges of battery and obstructing. The circuit court denied the

motion, and the Defendant thereafter waived his right to a trial by jury with regard to the bail jumping charge.

¶ 5. On October 14, 1996, the Defendant filed another motion, requesting that the battery and obstructing charges be tried to a jury of 12 persons. He argued that Wis. Stat. § 756.096(3)(am), which mandates six-person juries in misdemeanor cases, violates art. I, § 7 of the Wisconsin Constitution. Citing several Wisconsin Supreme Court and Courts of Appeals' decisions, including *State ex rel. Sauk County Dist. Attorney v. Gollmar*, 32 Wis. 2d 406, 409, 145 N.W.2d 670 (1966), the Defendant asserted that the jury contemplated by the framers of the Wisconsin Constitution is a 12-person jury, and that the right to a trial by jury applies to criminal misdemeanor cases.

¶ 6. The circuit court denied the Defendant's motion, concluding that the Defendant had not proved that Wis. Stat. § 756.096(3)(am) is unconstitutional beyond a reasonable doubt. In its oral decision, the circuit court distinguished *Gollmar*, stating that the statutory provisions addressed in *Gollmar* were distinct, and that *Gollmar* had been decided prior to court reorganization in 1978. The circuit court further concluded that the Wisconsin Legislature has the authority to alter the required number of jurors in a misdemeanor case.

¶ 7. On October 15, 1996, the Defendant filed a proposed jury instruction on the common law right to change one's name by consistently and continuously using a new name.[7] The proposed jury instruction was proffered as part of a theory of defense. The Defendant's theory of defense was that because he had

---

[7] The text of the jury instruction requested by the Defendant states:

changed his name in accord with the common law, he did not intentionally obstruct the officer in denying that he was Ronald Hansford and stating that his name was Bryan Storm. The circuit court denied the Defendant's request for the instruction, concluding that Wisconsin does not recognize a common law right to change one's name through consistent and continuous use.[8]

¶ 8. The charges of battery and obstructing an officer were tried to a jury of six persons. The jury acquitted the Defendant of the battery charge, and convicted the Defendant of the obstructing charge. Subsequently, the circuit court convicted the Defendant of bail jumping, citing the Defendant's conviction for obstructing as violating the terms of his bond.

¶ 9. The Defendant appealed his convictions on the charges of obstructing and bail jumping, and this court accepted certification of the case from the court of appeals.

---

Evidence has been received that the defendant has habitually and regularly used the name Bryan Storm. In Wisconsin, there are two ways to legally change one's name. First, an individual may petition a circuit court pursuant to the Wisconsin Statutes for an order changing his or her name. Second, an individual may effect a common law name change. A common law name change is effected without recourse to court order by simply adopting a new name and consistently and continuously using that name. In deciding whether the defendant in this case intentionally obstructed an officer in the performance of his duty, by informing the officer that his name was Bryan Storm, you may consider whether the defendant had lawfully changed his name to Bryan Storm under the common law by usage.

Record on appeal 21:2.

 [8] Specifically, the circuit court judge concluded "that there is no legal basis upon which to find that someone may effectuate a change in their name as proposed by the defense." Record on appeal 41:14.

## II.

## A.

¶ 10. We first address the issue certified by the court of appeals: whether Wis. Stat. § 756.096(3)(am) violates art. I, § 7 or art. I, § 5 of the Wisconsin Constitution. Whether a statute violates the Wisconsin Constitution is a question of law, which we review de novo. *See State v. Hall*, 207 Wis. 2d 54, 67, 557 N.W.2d 778 (1997). Although we review questions of law de novo, we benefit from the analyses of the circuit court and the court of appeals.[9] *See Aiello v. Village of Pleasant Prairie*, 206 Wis. 2d 68, 70, 556 N.W.2d 697 (1996). Statutes are afforded a presumption of constitutionality. *See Association of State Prosecutors v. Milwaukee County*, 199 Wis. 2d 549, 557, 544 N.W.2d 888 (1996). Therefore, the Defendant bears the burden of proving that § 756.096(3)(am) is unconstitutional beyond a reasonable doubt. *See id.*

¶ 11. We first consider the language of art. I, § 7 which states in part that "[i]n all criminal prosecutions the accused shall enjoy the right. . .in prosecutions by indictment, or information, to a speedy public trial by an impartial jury. . ." To determine the Defendant's rights guaranteed under this provision of the Wisconsin Constitution, we must attempt to ascertain the intent of the framers of the constitution, as well as how

---

[9] Although the court of appeals did not decide whether Wis. Stat. § 756.096(3)(am) violates the Wisconsin Constitution, it did provide this court with a limited analysis of the issue in its three-page certification to this court.

the right to trial by jury was understood at common law, at the time the constitution was adopted.[10]

¶ 12. The Wisconsin Constitution was adopted in 1848. Records from the constitutional conventions of 1846 and 1847–48[11] contain almost no debate about the guarantee of the right to a trial by jury. The little debate there was centered around the guarantee of a jury trial as opposed to a trial to the court, rather than the requisite number of jurors.[12] Thus, the issue of the

[10] Article XIV, § 13 of the Wisconsin Constitution states that the common law at the time the constitution was adopted remains in force. Although the legislature has the authority to alter Wisconsin's common law, it may not do so contrary to the provisions set forth in the Wisconsin Constitution. *See, e.g., Norval v. Rice*, 2 Wis. 17, 23 (1853) ("[W]henever. . .the operation of the statute must cause a deprivation of a right secured by the Constitution, the courts have no alternative—the statute must yield.").

[11] There were two constitutional conventions in Wisconsin. The Wisconsin Constitution drafted at the 1846 convention did not receive the necessary votes for ratification. Thereafter, Governor Dodge called a special session of the legislature which met on October 18, 1847, and "[w]ithin ten days the body. . .decided upon apportionment for sixty-nine delegates who should be elected on November 29, and assemble at the capitol on December 15 to draw up a new constitution." Alice E. Smith, 1 *The History of Wisconsin, From Exploration to Statehood*, 667 (1985). The delegates of the 1847–48 convention drafted a new constitution. The new constitution was approved for ratification, and "on April 10 [1848] Governor Dodge proclaimed the adoption of a constitution for Wisconsin." *Id.* at 676.

[12] In his speech to the members of the constitutional convention of 1847–48, Charles H. Lakin stated in part:

By the proposed amendment, if adopted, the line will be distinctly drawn between the bench and the jury box. . . .I wish to reinstate the ancient trial by jury, assigning to it its original prerogative and opening a great gulf between it and the bench. . . .But what I

number of jurors guaranteed by the constitution was not directly addressed. However, it was referenced by a delegate during a debate regarding whether art. I, § 5 should prohibit judges from instructing juries other than as provided by statute. In his speech to the convention, Charles H. Lakin, a delegate from Milwaukee, stated in part:

> If it be the *name* of trial by jury that enamours you, you can get something that will do as well, perhaps better, than flesh, and blood, and bones. Erect within your temples of justice twelve hollow, graven, brazen images. Have them so constructed that they will cast an echo; and as the *dicta* of the bench shall be hurled at them, the same will be reflected back to record; and if you will, you may call this, *trial by jury*.

> Confident am I, that every freeman would like to be able to say to every usurper, "thus far shalt thou come, and when you step over the line which divides you from the jury box, you tread upon ground hallowed and rendered sacred by the genius of the constitution."

*Journal of the Convention to form a Constitution for the State of Wisconsin*, 124 (1848) (emphasis in original).

¶ 13. The statements of Charles H. Lakin seem to indicate that the framers may have viewed the right to a trial by jury as the right to a jury of 12 persons. However, due to the limited information elicited from the debates of the constitutional conventions, we seek guidance from decisions of this court, particularly

complain of is that the prerogative of juries is swallowed up in the vortex of the bench.

*Journal of the Convention to form a Constitution for the State of Wisconsin*, 122 (1848).

those decisions that were handed down shortly after the adoption of the Wisconsin Constitution.

¶ 14. Five years after the adoption of the Wisconsin Constitution, this court addressed the issue whether ch. 86, § 16 of the Revised Statutes, which provided for a six-person jury in civil actions, violated Wis. Const. art. I, § 5. *See Norval v. Rice*, 2 Wis. 17 (1853). This court determined that the right to a jury trial is the right as recognized by common law at the time the constitution was adopted. *See id* at 20. In ascertaining the right at common law, this court cited numerous authorities, all of which construed the right to a jury trial as the right to a trial by a jury of 12 persons:

> Lord Coke. . .says: "Of these, a trial by *twelve* men is the most frequent and common. . . .[I]t seemeth to me that the law in this case delighteth herself in the number of *twelve*; for there must. . .be *twelve jurors for the trial of matters of fact.*"
>
> . . .
>
> [A]lso, in Blackstone's Commentaries, vol. 3, p. 351, it is said in relation to the *ordinary* trial by jury after issue joined, "the court awards a writ. . .commanding the sheriff that he cause to come here on such a day, *twelve* free and lawful men. . . ."
>
> "[W]hat greater security can any person have in his life, liberty or estate, than to be sure of not being divested of, or injured in any of these, without the sense of verdict of *twelve* honest and impartial men of his neighborhood? And hence we find the *common law herein* confirmed by *Magna Charta." Bacon's Ab., Title "Juries" vol. 5, p. 308.* . . .

237

In the third volume of his *Lectures on the Law of England, p.* 199, Professor Woodesson says of trial by jury: "Where no challenge is taken either to the whole array, or to the jurors individually, *twelve* of them are sworn to 'well and truly try the issue joined between the parties,' " &c.

Sir Matthew Hale says (2 *Hale's P.C.* 161): "But in case of a trial by the petit jury, it can be by no more nor less than twelve;". . .

"The petit jury when sworn, must consist precisely of twelve, and is never to be either more or less on the trial of the general issue." 1 *Chitty's C.L.* 505.

"From the earliest period of the common law, the term *jury* has had a technical and specific meaning, and has ever signified 'a body of twelve citizens. . . .' "

*Id.* at 20–22 (emphasis in original). Based upon these authorities, the *Norval* court concluded that right to a trial by jury guaranteed by the Wisconsin Constitution is the right to a jury of 12 persons as recognized by the common law as it existed at the time the constitution was adopted:

In our view of the provisions of the Revised Statutes concerning County Courts, where they restrict the jury to *six* persons, they conflict with the enjoyment of a constitutional right, secured to every citizen, namely, the right of trial by a jury of *twelve* men; and we therefore hold, that when the defendant in the court below was denied a trial by a jury consisting of twelve men, he was deprived of a right secured to him by the Constitution.

*Id.* at 23 (emphasis in original).

¶ 15. The discussion of the right to trial by jury in *Norval* is particularly significant given the make-up of

the Wisconsin Supreme Court at the time the decision was rendered. In 1853, the year that *Norval* was written, Edward V. Whiton was the Chief Justice of the court. Although the majority opinion was authored by Justice Samuel Crawford, Chief Justice Whiton, who joined the unanimous decision, had substantial insight into the intent of the framers of the Wisconsin Constitution. In 1847, Chief Justice Whiton was an attorney practicing law in Janesville, Wisconsin. *See Journal of the Convention to form a Constitution for the State of Wisconsin*, 18–19 (1848). He was also a delegate at the 1847–48 convention to re-draft the Wisconsin Constitution. *See id.*

¶ 16. Several years after *Norval* was decided, this court concluded that the right to a trial by jury was guaranteed to defendants in criminal cases under art. I, § 7 of the Wisconsin Constitution. *See Bennett v. State*, 57 Wis. 69, 14 N.W.2d 912 (1883). This court rejected an argument made by Bennett that art. I, § 5 secured a criminal defendant's right to a jury trial. However, this court determined that art. I, § 7 secured such a right, that right being a jury of 12 persons:

> It may be assumed that this section [art. I, § 7] secures to the accused in all criminal prosecutions a *right of trial* by jury, and that the jury mentioned in said section means a jury of twelve impartial men,—such a jury as was known to the common law and to the court of the territory of Wisconsin before the state was organized.

*Id.* at 75 (citations omitted) (emphasis in original). Subsequently, this court reaffirmed its holding in *Bennett* that art. I, § 7 guarantees the right to a 12-person jury in criminal trials. *See, e.g., In re Staff*, 63 Wis. 285, 295, 23 N.W. 587 (1885) (A criminal defendant "is enti-

tled to be tried by a jury, that is, a common-law jury, which must consist of twelve qualified jurors. . . ."); *Jennings v. State*, 134 Wis. 307, 309, 114 N.W. 492 (1908) ("It is unquestioned that a common-law jury of twelve jurors constitutes the jury contemplated by the constitution.").

¶ 17. Finally, in *Gollmar*, 32 Wis. 2d 406, this court considered the issue of whether an individual charged with a misdemeanor offense could obtain a six-person jury trial without the consent of the State. Although *Gollmar* involved the issue of waiver, in its discussion, this court recognized that the right to a jury trial is the right to a jury of 12-persons. *See id.* at 409. This court also cited its previous decisions concluding that the right to a jury trial guaranteed by art. I, § 7 of the Wisconsin Constitution extends to defendants charged with misdemeanors as well as felonies. *See id.* at 410 (citing *State v. Lockwood*, 43 Wis. 403 (1877); *State v. Smith*, 184 Wis. 664, 200 N.W. 638 (1924); *State v. Slowe*, 230 Wis. 406, 284 N.W. 4 (1939)).

¶ 18. In *Lockwood*, 43 Wis. at 403, the State filed an information charging the defendant with a misdemeanor offense. This court concluded that in a criminal misdemeanor case, "[t]he right to trial by jury, upon information or indictment for crime, is secured by the constitution. . . ." *Id.* at 405. Although the current practice is to charge misdemeanor offenses by summons or warrant and complaint, without indictment or information, we are persuaded that there is a present-day right to a jury trial in misdemeanor cases. To hold otherwise would allow a defendant's constitutional rights to hinge upon the discretion of the charging body, and/or the often-changing judicially and legislatively created pleading procedures.

¶ 19. In conclusion, the information from the constitutional conventions, as well as this court's decisions in *Norval, Bennett, Staff, Jennings, Gollmar*,[13] and the authorities cited therein, lead us to conclude that a criminal defendant's right to a trial by jury as guaranteed by art. I, § 7 of the Wisconsin Constitution, is the right to a jury of 12 persons. In addition, the decisions in *Lockwood, Smith, Slowe,* and *Gollmar* lead us to conclude that the right to a 12-person jury extends to all criminal defendants, regardless of whether they are charged with misdemeanor or felony offenses.

¶ 20. Our analysis is not altered by the United States Supreme Court's decision in *Williams v. Florida*, 399 U.S. 78 (1970). In *Williams,* the Supreme Court concluded that the Dade County Criminal Court's refusal to impanel a jury of more than six persons did not violate the criminal defendant's rights to a trial by jury guaranteed by the Sixth Amendment to the United States Constitution, as applied through the Fourteenth Amendment. The Supreme Court reasoned that, although juries at common law generally consisted of 12 members, there is "absolutely no indication" that the framers of the United States Constitution intended to "equate the constitutional and common-law characteristics of the jury." *Id.* at 98–100. Rather, the Supreme Court analyzed the particular functions and purposes of a jury and concluded that the 12-person requirement for a jury trial is not "an indis-

---

[13] We are not persuaded by the circuit court's attempt to distinguish *State ex rel. Sauk County District Attorney v. Gollmar*, 32 Wis. 2d 406, 145 N.W.2d 670 (1966), based upon the statutory provisions existing at that time and the fact that *Gollmar* was decided prior to the court reorganization of 1978.

pensable component of the Sixth Amendment." *Id.* at 100.[14]

¶ 21. We decline to extend the Supreme Court's reasoning in *Williams* to the Defendant's state constitutional argument in this case.[15] Although *Williams* is binding authority regarding challenges to six-person juries premised upon the Sixth and Fourteenth Amendments to the United States Constitution, we recognize that the Wisconsin Constitution may afford greater protection than the United States Constitution. *See State v. Doe*, 78 Wis. 2d 161, 171, 254 N.W.2d 210 (1977). The history surrounding the adoption of the Wisconsin Constitution, and the long-standing prece-

---

[14] Since its decision in *Williams v. Florida*, 399 U.S. 78 (1970), the United States Supreme Court has held that the right to a jury trial guaranteed by the Sixth Amendment to the United States Constitution must be a trial by a jury of *at least* six persons. *See Ballew v. Georgia*, 435 U.S. 223 (1978) (emphasis supplied).

[15] Notwithstanding the United States Supreme Court's decision in *Williams*, several states still provide criminal defendants who are charged with misdemeanor offenses the right to a jury of 12-persons, either through statutory provisions, rules of criminal procedure, or state constitutions. *See, e.g.*, Ala. Code § 12–16–100 (1995); Ala. R. Crim. P. 18.4; Alaska R. Crim. P. 23; Ark. Code Ann. § 16–32–203 (Michie Supp. 1997); Cal. Civ. Proc. Code § 220 (West Supp. 1998); Del. Super. Ct. Crim. R. 23; Haw. Rev. Stat. § 635–26, 806–60 (1993); 725 Ill. Comp. Stat. 5/115–4 (West 1996); Me. R. Crim. P. 23; Md. Rule 4–311; Mich. Comp. Laws § 768.18 (1979); Mo. Rev. Stat. § 543.210 (1994); N.J. Stat. Ann. § 2B:23–1 (West Supp. 1998); N.C. Gen. Stat. § 15A–1201 (1997); Pa. Const. art. I, § 6; R.I. Super. Ct. R. Crim. P. 23; S.C. R. Crim. P. 14; S.D. Codified Laws § 23A–18–2 (1988); Vt. R. Crim. P. 23; Wash. Super. Ct. Crim. R. 6.1; W. Va. R. Crim. P. 23.

dent of this court interpreting the meaning of the right to trial by jury under our constitution, satisfy us that the Defendant has proved beyond a reasonable doubt that Wis. Stat. § 756.096(3)(am) violates art. I, § 7 of the Wisconsin Constitution.[16]

■

¶ 22. Because the Defendant was not afforded the right to a jury of 12 persons, as guaranteed by art. I, § 7 of the Wisconsin Constitution, his conviction for obstructing an officer must be reversed and the cause remanded to the circuit court. In addition, the Defendant's conviction for bail jumping must also be reversed and the cause remanded.

¶ 23. At the time of his arrest for battery and obstructing, the Defendant had previously been released on bond for other offenses. One of the terms of the Defendant's bond stated: "You shall not commit any crime."[17] Record on appeal 42:8. Therefore, in addition to the charges for battery and obstructing an

---

[16] Because we conclude that Wis. Stat. § 756.096(3)(am) violates art. I, § 7 of the Wisconsin Constitution, it is unnecessary for us to consider whether § 756.096(3)(am) also violates art. I, § 5 of the Wisconsin Constitution. Furthermore, we note that the Defendant did not argue a violation of art. I, § 5 to the circuit court. Although the court of appeals' certification of the issue to this court was premised upon both art. I, § 7 and art. I, § 5, the Defendant's sole argument to the circuit court was that his right to a jury of 12 persons is "guaranteed by Article I, § 7 of the Wisconsin Constitution." Record on appeal 16:2. This court has often stated that we generally will not consider issues raised for the first time on appeal. *See State v. Holland Plastics Co.*, 111 Wis. 2d 497, 504, 331 N.W.2d 320 (1983).

[17] Wisconsin Stat. § 939.12 defines a crime as:

conduct which is prohibited by state law and punishable by fine or imprisonment or both. Conduct punishable only by a forfeiture is not a crime.

officer in this case, the Defendant was charged with bail jumping contrary to Wis. Stat. § 946.49.

¶ 24. The Defendant waived his right to a jury trial with regard to the bail jumping charge; therefore, the constitutional guarantees under art. I, § 7 of the right to a jury trial are not implicated. Rather, we review the charge of bail jumping to determine if the evidence presented at the circuit court supports the conviction. We "may not reverse a conviction unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶ 25. There are three elements that must be met for a conviction of bail jumping: (1) the individual must have been arrested for, or charged with, a felony or misdemeanor; (2) the individual must be released from custody on bond; and (3) the individual must have intentionally failed to comply with the terms of his or her bond. *See State v. Dawson*, 195 Wis. 2d 161, 170–71, 536 N.W.2d 119 (Ct. App. 1995); *see also* Wis JI—Criminal 1795 (Rel. No. 34—12/95). At the circuit court trial, the parties stipulated that the Defendant had been previously charged with a misdemeanor offense, and that the Defendant had been released on bond. *See* Record on appeal 42:3. In finding that the State had proved beyond a reasonable doubt that the Defendant intentionally failed to comply with the terms of his bond, the circuit court noted only that "a jury has found beyond a reasonable doubt that. . .the

defendant committed the crime of obstructing." Record on appeal 42:9.

¶ 26. Because the bail jumping conviction was premised solely upon the Defendant's obstructing conviction, which we now reverse, the bail jumping conviction must also be reversed. Absent a finding that the Defendant committed a crime, the State has not proved beyond a reasonable doubt an element of the bail jumping charge—that the Defendant intentionally failed to comply with the term of his bond prohibiting criminal activity. *See* Wis. Stat. § 946.49(1). The State must prove each element of a crime beyond a reasonable doubt before a Defendant may be found guilty. *See Poellinger*, 153 Wis. 2d at 501 (citing *In re Winship*, 397 U.S. 358, 364 (1970)). Because we are reversing the Defendant's conviction for obstructing, we conclude as a matter of law that the evidence, viewed most favorably to the State, does not support the Defendant's conviction for bail jumping. *See Poellinger*, 153 Wis. 2d at 501. Accordingly, we reverse the Defendant's conviction for bail jumping.

## B.

¶ 27. We conclude that Wis. Stat. § 756.096(3)(am) violates Wis. Const. art. I, § 7 and, therefore, we reverse the Defendant's convictions for obstructing an officer and bail jumping. Accordingly, it is unnecessary for us to consider whether the circuit court committed reversible error in denying the Defendant's request for a jury instruction on the common law right to change one's name. Denial of the Defendant's request was based upon the circuit court's belief that Wisconsin does not recognize such a right. We address the issue only to the extent necessary to clarify that

Wisconsin does recognize the common law right to change one's name through consistent and continuous use, as long as the change is not effected for a fraudulent purpose.

¶ 28. Whether Wisconsin recognizes the common law right to change one's name is a question of law. As stated, this court reviews questions of law de novo, benefitting from the analysis of the circuit court.[18] *See Aiello*, 206 Wis. 2d at 70.

¶ 29. The circuit court denied the Defendant's request for a jury instruction on the common law right to change one's name, reasoning that Wisconsin does not recognize such a right. Specifically, the circuit court stated that there are only two avenues by which an individual may change his or her name: (1) by marriage or divorce; or (2) by court order pursuant to Wis. Stat. § 786.36 which states in part:

> Any resident of this state, whether a minor or adult, may upon petition to the circuit court of the county where he or she resides and upon filing a copy of the notice, with proof of publication, as required by s. 786.37, if no sufficient cause is shown to the contrary, have his or her name changed or established by order of the court. . . .Any change of name other than as authorized by law is void.

We disagree with the circuit court. In addition to the above-mentioned methods available to change one's name, Wisconsin common law recognizes a third

---

[18] The court of appeals did not address or certify to this court the issue whether the circuit court committed reversible error by failing to instruct the jury on the common-law right to change one's name, absent a fraudulent purpose. However, the order from this court accepting certification stated that all issues raised on appeal would be addressed.

method: changing one's name through consistent and continuous use, as long as the change is not effected for a fraudulent purpose.[19]

¶ 30. In *Kruzel v. Podell*, 67 Wis. 2d 138, 140, 226 N.W.2d 458 (1975), the issue presented was "whether upon marriage a woman is required by law to assume the surname of her husband." In answering the question in the negative, this court determined that the Wisconsin Statutes did not require that a woman change her name upon marriage. Rather, it concluded that a woman's change of surname is generally effected by continuous use of her husband's surname:

> [I]n accordance with the common law of this state, as frequently explained by the attorney general, a change of name results from marriage only if, in accordance with common-law principles, the surname of a married woman's husband is habitually used by her. . . .This is no more than the recognition of a common-law rule that a person could change his name if it was not done for the purpose of fraud.

*Id.* at 150–51.

¶ 31. As stated in *Kruzel*, several opinions of the attorney general support the conclusion that a common law right to change one's name is recognized in Wisconsin.

> At common law it was the rule that in the absence of statutory restriction, and where it is not done for a fraudulent purpose, one could lawfully change his name at will without proceedings of any sort, merely by adopting another name, and for all purposes the name thus assumed would constitute his

___

[19] In its brief to this court and at oral argument, the State conceded that Wisconsin recognizes a common law right to change one's name.

legal name just as much as if he had borne it from birth. 19 R. C. L. 1332; 45 C. J. 381–382; L. R.A. 1915D 982.

. . .

> It should be noted, however, that while applications under the statutes are encouraged in order that there may be a record of the change in name, in the absence of an express provision making the statutory method exclusive, it is held that such statutes do not abrogate the common law right of an individual to change his name without application to the courts. 45 C.J. 382.

20 Wis. Op. Att'y Gen. 627, 628, 630 (1931). *See also* 21 Wis. Op. Att'y Gen. 528, 529 (1932) ("Hence, we find that at common law a man might change his name as radically and as often as he desired, if for an honest purpose and not to the injury of third persons."); 35 Wis. Op. Att'y Gen. 178, 179 (1946) (Recognizing the "inherent right of a person to change his name in the absence of a provision making the statutory method exclusive.").

¶ 32. The language of Wis. Stat. § 786.36 does not state that petition to the circuit court for an order is the exclusive method of changing a person's name. Section 786.36 merely sets forth a detailed method of changing a name through court order. The section does state that "[a]ny change of name other than that authorized by law is void;" however, it does not state that § 786.36 is the exclusive method recognized by law.

██

¶ 33. This court has previously stated that there is a common law right to change one's name, absent a fraudulent purpose. *See Kruzel*, 67 Wis. 2d at 150–51. This common law right is therefore a method "author-

ized by law" which is consistent with Wis. Stat. § 786.36. Therefore, absent a fraudulent purpose, an individual in Wisconsin has the common law right to change his or her name through continuous and consistent use.

## III.

¶ 34. In summary, we conclude that Wis. Stat. § 756.096(3)(am), providing for six-person juries in misdemeanor cases, violates art. I, § 7 of the Wisconsin Constitution which guarantees the right to a jury of 12 persons, as recognized by the common law as it existed at the time the Wisconsin Constitution was adopted. The long-standing precedent of this court interpreting the right to trial by jury under our constitution thoroughly supports this conclusion. Accordingly, we reverse the Defendant's convictions for obstructing an officer and bail jumping and remand the case to the circuit court for further proceedings consistent with this opinion. We further conclude that a common law right to change one's name through consistent and continuous use is recognized in Wisconsin, as long as the change is not effected for a fraudulent purpose.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.