STATE of Wisconsin, Plaintiff-Respondent,

v.

Lawrencia Ann BEMBENEK, Defendant-Appellant.†

Court of Appeals

*No. 2004AP1963–CR. Submitted on briefs: August 2, 2006.
—Decided September 6, 2006.*

2006 WI App 198

(Also reported in 724 N.W.2d 685.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mary L. Woehrer* of *Woehrer Law Office*, Milwaukee and *Joseph F. Owens* of *Arthur & Owens S.C.*, New Berlin.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Curley, Kessler and Anderson, JJ.

¶ 1. KESSLER, J. Lawrencia A. Bembenek appeals from an order denying her motion requesting that the State pay for postconviction deoxyribonucleic acid ("DNA") testing of items in the State's possession which Bembenek "believes will exonerate her."

¶ 2. On December 9, 1992, Bembenek entered into a plea agreement wherein she agreed to plead no contest to the charge of second-degree murder of Chris-

tine Schultz in exchange for the vacating of her conviction of the first-degree murder of Schultz, a sentence recommendation by the State of twenty years, credit for all time served,[1] and a waiver of any and all of her appeal rights or rights to collaterally attack any of the underlying evidence, including her right to assert any claim of innocence to the murder.[2] On April 14, 2002,

[1] This sentence recommendation was effectively one of "time already served" and, therefore, the trial court's imposition of the twenty-year sentence had the effect of releasing Bembenek from prison immediately, with the remainder of the twenty years served as parole.

[2] This agreement, as set out at the December 9, 1992 hearing, is as follows:

[DEPUTY DISTRICT ATTORNEY]: The State of Wisconsin and defendant Lawrencia Bembenek, through her attorney Sheldon Zenner, have reached an agreement which we present to the Court to resolve this matter . . . . The resolution is that Lawrencia Bembenek's 1982 conviction for first degree murder be vacated, with the understanding that she will enter a plea of no contest to a charge of second degree murder, contrary to Wisconsin Statutes sec. 940.02(1) as it existed back then . . . .

Further, as part of the agreement, Lawrencia Bembenek agrees to waive certain appellate rights. Those rights consist of any agreement to withdraw a plea based on a claim of innocence, any challenges to the underlying factual basis for the plea, any type of direct or collateral appeal, any type of challenge to the sentencing, and any type of challenge to any waiver of the rights involved in the entry of a plea.

Finally, each side is free to argue to the Court for any disposition that it believes to be appropriate based upon all the facts and circumstances.

\* \* \*

[THE COURT]: In terms of the outline of the agreements between the parties, then it is my understanding that by the stipulation of the parties you are asking the court to vacate the judgment of conviction. The State would then file an amended

Bembenek was released from parole, her sentence fully completed. Because we conclude that Bembenek's action in bringing the underlying motion and this appeal[3] is a breach of her plea agreement, and the appropriate remedy for this breach is the dismissal of her appeal, we affirm.

## BACKGROUND

¶ 3. We briefly summarize the lengthy saga of Bembenek's litigation in Wisconsin courts to put this appeal in context. In 1981, Schultz was found shot to death in the bedroom of her home. In 1982, Bembenek was convicted by a jury of first-degree intentional homicide in the death of Schultz and sentenced to life in prison. On direct appeal from that conviction, the court of appeals affirmed the conviction, rejecting all nine issues raised by Bembenek. In 1985, Bembenek filed a motion for a new trial alleging newly discovered evidence. That motion was denied. In 1987, Bembenek filed a motion for post-conviction relief alleging ineffective assistance of counsel. The trial court denied relief.

information. Your client is prepared to enter a plea of no contest to that Amended Information. Each side would be free to argue for any disposition they thought appropriate within the terms of the maximum sentence that could be imposed at that time under the statute, 20 years for a Class B felony at that time. And further it's my understanding that your client is agreeing to waive appellate rights as described by Mr. Donohoo in his statement.

[COUNSEL FOR BEMBENEK]: That is all correct.

[DEPUTY DISTRICT ATTORNEY]: That is correct.

[3] In her notice of appeal, Bembenek appealed "from the whole of the Final Orders entered on June 15, 2004, including all prior proceedings, decisions, and rulings relative to post conviction proceedings commencing on and since August 23, 2002 in Case No. K0775."

In 1990, the court of appeals affirmed. Bembenek then filed a petition for review with the Wisconsin Supreme Court which the court dismissed due to Bembenek's escape from prison and her fugitive status.[4]

¶ 4. In 1991, a John Doe proceeding was convened to investigate charges of mismanagement and improprieties in the investigation and prosecution of the murder of Christine Schultz by the Milwaukee Police Department and the Milwaukee County District Attorney's Office. In August 1992, the John Doe judge found that while significant mistakes were made in the investigation of Schultz's murder, there was no probable cause to believe that these mistakes were intentional. The John Doe judge further found that there was no probable cause to believe that:

(1) "perjury was encourage [sic] or procured or that there was any other criminal wrongdoing on the part of law enforcement personnel . . . " or that

(2) "the Milwaukee County District Attorney's Office knowingly used false testimony, intentionally or otherwise, failed to disclose exculpatory evidence to the defense, or engaged in any other impropriety in the prosecution of Lawrencia Bembenek . . . [including] no probable cause to believe that any law enforcement agency or personnel engaged in a conspiracy to frame Lawrencia Bembenek."

¶ 5. In 1992, Bembenek filed a motion for a new trial again alleging newly discovered evidence. Before this motion was decided, Bembenek and the State reached an agreement wherein Bembenek would plead

---

[4] Bembenek escaped from Taycheedah Correctional Institution in July 1990. She was recaptured in Thunder Bay, Ontario, Canada in October 1990 and eventually returned to custody in Wisconsin.

no contest to second-degree intentional homicide in exchange for a reduction of the charge for which she had been convicted, a sentencing recommendation effectively to time served, and her waiver of a number of rights, including all future appeals or collateral attacks on her conviction. On December 9, 1992, at the hearing originally set on Bembenek's motion for new trial or to vacate judgment, the parties informed the trial court that a plea agreement had been reached "that obviated the need for the court to decide that motion." The plea agreement provided that Bembenek's "first-degree murder conviction would be vacated and that she would enter a no contest plea to a charge of second-degree murder."

¶ 6. The trial court, in its plea colloquy, specifically confirmed that Bembenek understood that she was:

- "waiving her right to litigate any defenses, including the defense of actual innocence";

- waiving her "right of direct appeal, the right of some collateral attack on the judgment, the right to bring motions to withdraw this plea at some point in the future"; and

- waiving "*any challenges that might be brought to the underlying factual basis for this plea.*" (Emphasis added.)

Additionally, as expressly noted on the No Contest Plea Questionnaire and Waiver of Rights Form, Bembenek specifically waived the "right to challenge matters set forth in motions, such as the arrest, suppression of physical evidence, suppression of identification, [or] challenges to the sufficiency of the complaint and/or information."

¶ 7. Bembenek acknowledged, on the record, in response to questioning by the trial court, that she understood each specific constitutional right identified in the No Contest Plea Questionnaire, and that she was waiving those rights with her plea of no contest. Bembenek's counsel specifically noted, when arguing for a sentence to time already served, that giving such a sentence "will certainly help Miss Bembenek get started back on the track toward getting her life in order and beginning a new life . . . . I can tell you that her foremost interest is to put this entire matter behind her once and forever."

¶ 8. On August 23, 2002, after fully completing her sentence, and twenty years after her original conviction, Bembenek filed a Motion for Release of Evidence for DNA Testing Pursuant to WIS. STAT. § 974.07.[5] The State and Bembenek thereafter stipulated to the release of fourteen items to be tested. On December 16, 2002, Bembenek then filed a Motion for Ballistic Testing, requesting further ballistic testing of the gun determined by the jury to be the murder weapon. The State subsequently agreed to have this testing done. In 2003, Bembenek moved the trial court to vacate the judgment of conviction and for an entry of a judgment of acquittal.

¶ 9. The trial court denied all of Bembenek's pending motions, concluding that the results of the DNA testing were insufficient to find that "there is a reasonable probability [Bembenek] would not have been convicted for the Christine Schultz homicide if this evidence had been available before her trial" and

---

[5] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

further ruling that the related ballistic testing re-
quested was therefore unnecessary. Bembenek ap-
pealed.

## DISCUSSION

¶ 10. A review of the record in this case convinces
us that we must affirm this dismissal on a basis other
than the one relied upon by the trial court. *Kafka v.
Pope*, 186 Wis. 2d 472, 476, 521 N.W.2d 174 (Ct. App.
1994) (acknowledging that the court of appeals "can
affirm for reasons not stated by the trial court even if
the reasons were not argued before the trial court"); *see
also Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331,
342, 204 N.W.2d 457 (1973) (holding that when an
appellate court affirms on other grounds, it need not
discuss the trial court's chosen grounds of reliance).

## EFFECT OF THE PLEA AGREEMENT

¶ 11. Plea bargaining has been recognized as an
"essential component of the administration of justice."
*Santobello v. New York*, 404 U.S. 257, 260, (1971); *see
also State ex rel. White v. Gray*, 57 Wis. 2d 17, 21, 203
N.W.2d 638 (1973) ("Plea bargaining is an accepted and
necessary part of the process whereby a good many
criminal prosecutions are terminated as a result of a
guilty plea."). Because a plea bargain is analogous to a
contract, we look to contract-law principles to deter-
mine a defendant's rights thereunder. *State v. Windom*,
169 Wis. 2d 341, 348, 485 N.W.2d 832 (Ct. App. 1992);
*State v. Jorgensen*, 137 Wis. 2d 163, 167, 404 N.W.2d 66
(Ct. App. 1987). "A contract is based on a mutual
meeting of the minds as to terms, manifested by mutual
assent." *Goossen v. Estate of Standaert*, 189 Wis. 2d 237,

246, 525 N.W.2d 314 (Ct. App. 1994); *see also State v. Bowers*, 2005 WI App 72, ¶ 26, 280 Wis. 2d 534, 696 N.W.2d 255 (Brown, J. dissenting) (noting that one "major tenet" of contract law is the mutuality of assent; accordingly, "[i]n plea bargaining terms, there must be a promissory exchange and the promise of certain benefits, including the exact penal promises, in return for a defendant's promise to enter a guilty or no contest plea.").

¶ 12. Bembenek and the State reached a mutual assent to the terms, and benefits, of their plea agreement, an agreement into which Bembenek entered knowingly, voluntarily and intelligently. In exchange for having her conviction for first-degree murder vacated (thus eliminating a mandatory life sentence) and obtaining a new sentence which would allow her to be released from prison immediately, Bembenek agreed to plead no contest to second-degree murder and to waive a number of rights, including any right to bring a "collateral attack on the judgment . . . [or] any challenges that might be brought to the underlying factual basis for this plea." Bembenek's agreement is reflected in the record. When specifically asked by the trial court, "Do you have any questions about any of the rights that we've discussed here today?" Bembenek answered, "No questions." And when asked if she understood these rights were being given up, she answered "Yes, I understand." In response to the trial court's inquiry as to whether any other promise had been made to Bembenek to induce her into pleading no contest or whether she was forced or threatened in any way to induce her into entering into the plea agreement, Bembenek answered "No." Finally, when asked by the trial court if "this is a decision that you have come to freely and voluntarily?", Bembenek answered, "Yes, I have." At all

times in this proceeding, Bembenek was represented and assisted by counsel. Bembenek has not claimed that her plea was not knowing and voluntary and the record reflects an intelligent, knowing and voluntary plea by Bembenek.

¶ 13. The trial court asked the State its reasoning for moving to vacate the original first-degree murder conviction and for · agreeing to the lesser charge of second-degree murder. The State explained that while the "State of Wisconsin remains convinced that Lawrencia Bembenek is guilty of the slaying of Christine Schultz on May 28, 1981," a conviction of second-degree murder was consistent with the evidence and the State's theories of the case at the original trial. The State further noted that should the trial court grant Bembenek's motion for a new trial, there are many difficulties inherent in re-trying a case over a decade after the first trial and a resolution through this plea agreement furthers the interests of justice.

¶ 14. In accepting the reduced charge and plea, the trial court observed:

> The third reason why I believe this negotiation furthers the interests of justice in this case is finality. The no contest plea in this case and waiver of appellate rights will put an end to the legal battles fought between the State of Wisconsin and the defendant in this court system over the past 10 years. Finality in the criminal justice system is a principle too often lost and ignored. Endless post-conviction litigation in criminal cases too often serves no legitimate purpose in furthering the interests of the community or a defendant.

¶ 15. The record demonstrates that an exchange of promises in return for specific benefits occurred: (1) Bembenek would no longer be convicted of first-degree murder; (2) Bembenek would be eligible,

under her new sentence for second-degree murder, for immediate release from prison to parole; (3) the State would no longer need to devote significant resources to Bembenek's numerous collateral attacks on her convictions; and (4) Bembenek had been punished proportionately to the crime for which she was now convicted. Additionally, the plea agreement provided a final disposition in the murder case of Schultz for both parties and the community at large. There was a mutuality of assent to the terms of the plea agreement which was respected by Bembenek for ten years, until 2002, when she filed her motion for DNA testing and acquittal.

¶ 16. Bembenek's no contest plea is equivalent to a guilty plea. "The general rule is that a guilty, no contest, or *Alford*[6] plea 'waives all nonjurisdictional defects, including constitutional claims[.]' " *State v. Kelty*, 2006 WI 101, ¶ 18, 294 Wis. 2d 62, 716 N.W.2d 886 (citing *State v. Multaler*, 2002 WI 35, ¶ 54, 252 Wis. 2d 54, 643 N.W.2d 437). This is known as the guilty-plea-waiver rule. *Kelty*, 716 N.W.2d 886, ¶ 18.[7] Here Bembenek entered into a legally valid plea agreement.

---

[6] *North Carolina v. Alford*, 400 U.S. 25 (1970) (allowing a defendant to agree to accept conviction while simultaneously maintaining his or her innocence has become recognized as an *Alford* plea).

[7] Federal courts have addressed waiver in the context of pleas and plea agreements, and have enforced waiver of appellate rights. *See U.S. v. Schmidt*, 47 F.3d 188 (7th Cir. 1995), holding:

> As a preliminary matter, we must address the question of the defendants' waivers of their right to appeal. Although the government has not relied on the defendants' waivers, we are not precluded from affirming on that basis. *See, e.g., United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991) *(per curiam)* (appellate court has the discretion to overlook the government's

## She entered into it knowingly, voluntarily and intelligently. *See State v. Bangert*, 131 Wis. 2d 246, 267–72,

failure to argue harmless error). In deciding whether to determine the merits of the Schmidts' arguments or overlook the government's failure to argue waiver, one controlling consideration is whether the waivers were "certain or debatable." *Id.* Accordingly, we have focused our attention on the circumstances surrounding the Schmidts' execution of their plea agreements, each of which contained the waiver of the right to appeal.

Several of our sister circuits have held that a waiver of a right to appeal contained within a guilty plea is enforceable. *See United States v. Bushert*, 997 F.2d 1343, 1347–50 (11th Cir. 1993); *United States v. Melancon*, 972 F.2d 566, 567–68 (5th Cir. 1992); *United States v. Rivera*, 971 F.2d 876, 896 (2d Cir. 1992); *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir. 1992); *United States v. Navaro-Botello*, 912 F.2d 318, 321–22 (9th Cir. 1990), *cert. denied*, 503 U.S. 942, 112 S. Ct. 1488, 117 L. Ed. 2d 629 (1992); *United States v. Wiggins*, 905 F.2d 51, 52–54 (4th Cir. 1990); *see also United States v. Hendrickson*, 22 F.3d 170, 174 (7th Cir. 1994) (finding no waiver of the right to appeal because such a waiver "must be express and unambiguous"); *Johnson v. United States*, 838 F.2d 201, 203–04 (7th Cir. 1988) (upholding waiver of right to appeal not contained in the plea agreement but in a separate pleading). These courts reasoned that it is well settled that a defendant may waive constitutional rights as part of a plea bargaining agreement. *Newton v. Rumery*, 480 U.S. 386, 393, 107 S. Ct. 1187, 1192, 94 L. Ed. 2d 405 (1987). Although the right to appeal is statutory and not constitutional, *Abney v. United States*, 431 U.S. 651, 656, 97 S. Ct. 2034, 2038, 52 L. Ed. 2d 651 (1977), the courts have upheld waiver of the statutory right to appeal. *E.g., Melancon*, 972 F.2d at 567–68.

The courts have, however, placed restrictions on the waiver of the right to appeal. Obviously a waiver will be upheld only if the record clearly demonstrates that the defendant knowingly and voluntarily entered into the plea agreement. *Id.* Additionally, despite a valid waiver of the right to appeal, a defendant could appeal his sentence if the trial court relied on a constitutionally impermissible factor such as race or if the court sentenced the defendant above the statutory maximum. *United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992) ("a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court. For example, a defendant could not be said to have waived his right to appellate review of a

389 N.W.2d 12 (1986) (holding that guilty and no contest pleas are constitutionally valid if entered knowingly, intelligently and voluntarily). She received substantial benefits from that agreement. In that plea agreement, Bembenek specifically waived her right to claim her innocence, and her right to collaterally attack any evidence which was underlying the conviction. Accordingly, Bembenek waived any right to DNA testing of that evidence or court action to pursue such tests.

¶ 17. By filing motions to reexamine the evidence in 2002, Bembenek breached her plea agreement. "A material and substantial breach of a plea agreement is one that violates the terms of the agreement and defeats a benefit for the non-breaching party." *State v. Deilke*, 2004 WI 104, ¶ 14, 274 Wis. 2d 595, 682 N.W.2d 945 (citations omitted). Collateral attacks on convictions may be substantial and material breaches of a plea agreement. *Id.*, ¶¶ 22–24 ("[C]ollateral attack ... prevented the State from receiving all it bargained for when it dismissed multiple charges in exchange for one ... conviction .... [A] party to a plea agreement cannot do an 'end run' around the plea agreement and ... accomplish by indirect means what could not be done by direct means."). Bembenek's breach here is both material and substantial because she has caused the State to, again, spend its resources responding to Bembenek's seemingly unending efforts to overturn her now twenty-year-old conviction for the death of Schultz.

sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race.").

*Id.* at 190.

¶ 18. In evaluating the appropriate remedy for a material and substantial breach of a plea agreement by a defendant, "[a] court must examine all of the circumstances of a case to determine an appropriate remedy for that case, considering both the defendant's and State's interests." *Id.*, ¶ 25 (citation omitted). "One remedy is to vacate the negotiated plea agreement and reinstate the original charges against the defendant." *Id.* Were we to order that remedy and reinstate the first murder conviction, it might well result in reincarceration of Bembenek to serve the remainder of her life sentence. We decline to impose so harsh a sanction in view of the State's concession in the plea agreement. Alternatively, if the State were required to re-try Bembenek twenty years after the crime was committed, it would likely be seriously disadvantaged in locating witnesses and producing evidence no longer retained.

¶ 19. In the ten years following her original first-degree murder conviction, Bembenek filed numerous collateral attacks on her conviction. The State, in an attempt to bring closure for all involved, agreed to enter into this plea agreement with Bembenek. For the State to now be required to continue to litigate with Bembenek, or perhaps to re-try a case more than twenty years after the fact, is exactly the result that the State sought to avoid by its plea agreement. The State is entitled to the benefit of that agreement, just as Bembenek has already enjoyed its benefits. Under the circumstances of this case, in light of the significant passage of time—over twenty years since Bembenek's original conviction and fourteen years since her plea

agreement and no contest plea—we conclude that the most appropriate remedy for Bembenek's breach is dismissal of this appeal.

*By the Court.*—Order affirmed.