STATE of Wisconsin, Plaintiff-Respondent,

v.

Jermaine SMITH, Defendant-Appellant.

Court of Appeals

*No. 2008AP2106–CR. Submitted on briefs April 30, 2009.
—Decided June 16, 2009.*

2009 WI App 104

(Also reported in 770 N.W.2d 779.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jermaine Smith*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Michael J. Loose*, assistant attorney general.

Before Fine, Kessler, and Brennan, JJ.

¶ 1. KESSLER, J. Jermaine Smith appeals from an order denying his "motion to amend his Judgment of Conviction to reflect his common law spiritual name," which he states is "Marcôlô Vôn Capôeira." Because Smith's motion fails to provide any support for his assertion that he used the name Marcôlô Vôn Capôeira for ten years (including four years prior to the time his crime was committed) and because he did not raise this issue during his criminal case, we affirm the order.

## BACKGROUND

¶ 2. Smith was convicted of one count of first-degree intentional homicide, while armed, based on the 2002 slaying of the wife of Smith's gang leader's landlord. We affirmed Smith's conviction in 2005. *State v. Smith*, 2005 WI App 152, 284 Wis. 2d 798, 702 N.W.2d 850. On June 1, 2007, Smith filed a postconviction motion pursuant to Wis. Stat. § 974.06 (2007–08),[1] raising various issues related to his conviction, including ineffective assistance of appellate counsel. The trial court denied his motion in June 2007. Smith did not appeal.

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

¶ 3. On May 13, 2008, Smith filed a "motion to amend his Judgment of Conviction to reflect his common law spiritual name." Specifically, he sought to amend the judgment so that his name was listed as: "Marcôlô Vôn Capôeira a/k/a Jermaine Smith." He explicitly asserted that he was not seeking a name change pursuant to Wis. Stat. § 786.36, the statute that provides procedures for changing one's name, and thus, that statute should not govern his request.

¶ 4. The trial court requested briefs from the State and Smith. The State's response included an affidavit from William Pollard, Warden of the Green Bay Correctional Institution where Smith is imprisoned. In the affidavit, Pollard stated that granting the request would "seriously impede our ability to identify and control inmates." Pollard also stated that the name change would greatly burden the correctional system, due to the need to change at least nineteen different files and numerous computer databases. The affidavit did not present any reasons to deny Smith's motion that would not apply to all inmates.

¶ 5. In response, Smith argued that changing his name would not create a heavy administrative burden. He asserted that he had learned from an employee of the prison's records office that not all of the records would need to be changed. Smith did not provide an affidavit from the employee or any details explaining why the need to change the records would not be burdensome to the Department of Corrections.[2]

¶ 6. The trial court denied Smith's motion in a written order. The order stated:

---

[2] Smith's trial court reply brief referenced "Exhibit A," which he might have intended to be an affidavit. However, no exhibit or affidavit was attached to the reply brief or otherwise filed with the trial court.

> Based on the numerous records and files that the State must alter to effect this type of addition to the name with which the defendant entered the institution, the court finds it would be unduly and overly burdensome [for] the State. The court therefore denies the defendant's request to amend the judgment of conviction for purposes of adding another name.

This appeal follows.

## DISCUSSION

█

¶ 7. The State urges us to affirm the trial court order on numerous bases, including that the trial court properly exercised its discretion when it denied Smith's motion based on the administrative burden the name change would place on the correctional system. We affirm the order, but on a basis not relied upon by the trial court. *See State v. Bembenek*, 2006 WI App 198, ¶ 10, 296 Wis. 2d 422, 724 N.W.2d 685 (The court of appeals " 'can affirm for reasons not stated by the trial court even if the reasons were not argued before the trial court.' ") (citation omitted). Specifically, we affirm because Smith has not provided any evidence to support his assertion that he changed his name pursuant to the common law and because he failed to raise this issue during his criminal case.

¶ 8. We begin our analysis with *State v. Tiggs*, 2002 WI App 181, 256 Wis. 2d 739, 649 N.W.2d 709, the only published case addressing an inmate's motion to amend his judgment of conviction to reflect a name change (the situation presented here). Nearly two years after he was convicted, Tiggs filed a motion to amend the judgment of conviction to reflect his legal name, which he asserted was Akinbo Jihad Suru Hashim, rather than his given name. *Id.*, ¶¶ 1, 3. Tiggs provided

"a document purporting to be from the District Court of Leavenworth County, Kansas, dated October 31, 1990, decreeing that the name of John David Tiggs, Jr. be changed to Akinbo Jihad Suru Hashim." *Id.*, ¶ 3.

¶ 9. The trial court denied Tiggs's motion. First, the trial court noted that Tiggs had not raised the issue when his criminal case was pending before the trial court. *Id.*, ¶ 4. The trial court concluded that Tiggs should have raised the issue during the criminal proceedings and that it was now too late. *Id.* Second, the trial court took judicial notice of the fact that Tiggs had not used his legal name when he filed ten civil cases and numerous *pro se* motions during his criminal case. *Id.*, ¶ 5. Finally, as we explained in *Tiggs*, the trial court concluded that:

> if the motion were granted, it would create much confusion within the court system, the criminal justice system and the Department of Corrections, especially if that person were later placed on parole or supervision. The court was concerned that if a prisoner could bring a motion to change a legal document subsequent to conviction, it could also open the door to fraud. This would pose a difficulty for law enforcement officials and probation and parole officials.

*Id.*, ¶ 6.

¶ 10. We affirmed the trial court's order. We explained:

> We agree with Tiggs that once he has changed his legal name, he has a positive right to be called by that name. But he may also, by conduct, forfeit that right. If he calls himself by some other name, he has announced to the world that he goes by that other name and others then have the right not only to call him by that other name, but to create and file documents under that name. Tiggs had the initial control after the name

567

change to dictate what name he was going to be called, but he relinquished that control. He cannot now assert control on a haphazard basis whenever he wants to and assume that every entity must accede to his wishes. As the trial court properly noted, to rule for Tiggs would be to allow him an avenue to manipulate the criminal justice system at his will. That cannot be allowed or condoned.

*Id.*, ¶ 9.

¶ 11. Like Tiggs, Smith is asserting that his name was legally changed prior to the time he committed the crime for which he is imprisoned. Unlike Tiggs, Smith asserts that his name was changed not by virtue of a court order, but by application of common law. Smith is correct that Wisconsin law allows one to change one's name via the common law. *See State v. Hansford*, 219 Wis. 2d 226, 246, 580 N.W.2d 171 (1998) (Wisconsin "recognize[s] the common law right to change one's name through consistent and continuous use, as long as the change is not effected for a fraudulent purpose."). However, we conclude that Smith's motion—which was based on his assertion that he changed his name via the common law—failed to provide any evidence that he changed his name through consistent and continuous use. Moreover, he failed to raise this issue during the pendency of his criminal case, even though he was supposedly already using the name Marcôlô Vôn Capôeira during that time. For these reasons, the motion was properly denied.

¶ 12. Like Tiggs, Smith had the opportunity while his criminal case was pending to raise with the trial court his claim that the name on the complaint andot-

her filings was not his legal name. He did not do so.[3] Like Tiggs, Smith filed postconviction proceedings in which he failed to timely make the claim that his name was improperly reflected in the judgment. As in *Tiggs*, we conclude that Smith's failure to raise the issue of a different legal name, which he claims he was using before he even committed the crime, during his criminal case constitutes a forfeiture of any right to seek to amend the judgment to reflect that name. In addition, we conclude that Smith has failed utterly to provide any evidence of his "consistent and continuous use" of a name other than Jermaine Smith. *See Hansford*, 219 Wis. 2d at 246.

¶ 13. Based on Smith's failure to provide any evidence in support of his bald assertion that he used the name Marcôlô Vôn Capôeira for ten years or to raise this issue while the criminal case was pending, the trial court need not have decided the issue of whether there are reasons the name change should not be recognized. Therefore, we do not decide whether the trial court erroneously exercised its discretion when it refused to grant Smith's motion on grounds that the name change would overly burden the prison system. *See Bembenek*, 296 Wis. 2d 422, ¶ 10.

*By the Court.*—Order affirmed.

[3] We have examined the transcripts of Smith's case. At no point did Smith or his trial counsel seek to have the name Marcôlô Vôn Capôeira used in the complaint, information or judgment.