STATE of Wisconsin, Plaintiff-Respondent,

v.

Rodney G. ZIVCIC, Defendant-Appellant.†

Court of Appeals

*Nos. 98–0909, 98–1381. Submitted on briefs April 6, 1999.—Decided June 29, 1999.*

(Also reported in 598 N.W.2d 565.)

†Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John J. Carter* of *Law Offices of John J. Carter* of Greenfield.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *E. Michael McCann*, district attorney by *Mary Anne Smith*, assistant district attorney of Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

WEDEMEYER, P.J.   Rodney G. Zivcic appeals from a judgment entered after a jury convicted him of operating a motor vehicle while under the influence of an intoxicant (third offense), contrary to §§ 346.63(1) and 346.65(2), STATS. He also appeals from an order finding that Zivcic improperly refused to provide a breath sample under Wisconsin's Implied Consent Law, contrary to § 343.305, STATS.[1] Zivcic raises four issues: (1) whether he is entitled to a new trial based on our supreme court's decision in *State v. Hansford*, 219 Wis. 2d 226, 580 N.W.2d 171 (1998), which held that § 756.096(3)(am), STATS., 1995–96, ("A jury in misdemeanor cases shall consist of 6 persons.") was unconstitutional; (2) whether the Milwaukee County

---

[1] The judgment and order arose from two related cases in the trial court and were consolidated for appeal.

deputy sheriff illegally arrested him because the arrest occurred in the City of Greenfield and the sheriff's department has not complied with the requirements of § 175.40(5)(d), STATS.; (3) whether the trial court erroneously exercised its discretion in admitting expert testimony regarding a field sobriety test; and (4) whether the trial court erroneously exercised its discretion in admitting the "deficient sample" printout on the test record card printed by the Intoxilyzer 5000, which was utilized to attempt Zivcic's breath test following his arrest. Because Zivcic did not raise any objection to the six-person jury, because the deputy had authority, pursuant to § 59.28(1), STATS., to arrest Zivcic, and because the trial court did not erroneously exercise its discretion in rendering the evidentiary rulings, we affirm.

## I. BACKGROUND

On December 18, 1996, Milwaukee County Deputy Sheriff Michael Pauley was patrolling the I–43 expressway. At about 3:50 a.m., he exited I–43 at 84th Street in the City of Greenfield. A motorist informed him that there was a person passed out or slumped over the wheel of a running vehicle near the intersection of 84th Street and Coldspring Road. The deputy investigated and found Zivcic asleep in his parked vehicle with the motor running. Deputy Pauley reached into the vehicle to turn off the motor and attempted to wake Zivcic. When Zivcic awoke, Deputy Pauley asked him to perform several field sobriety tests. Deputy Pauley also smelled a very strong odor of alcohol inside the vehicle and on Zivcic. He also noticed that Zivcic's eyes were red and bloodshot.

Deputy Pauley administered the horizontal gaze nystagmus test (HGN) and the alphabet test. Zivcic's

speech was slurred at times and there was an open twelve-pack of beer in the front of the passenger section of Zivcic's vehicle, with only two unopened cans. Zivcic was arrested and transported to the sheriff's substation for Intoxilyzer testing.

Deputy Sheriff David Szibel attempted to administer a breath test to Zivcic using an Intoxilyzer 5000 machine. Zivcic blew into the machine, but did not blow enough air to provide an adequate sample. The Intoxilyzer machine printed on the test record card that the breath samples were a "deficient sample."

A criminal complaint was issued charging Zivcic with operating a motor vehicle while under the influence of an intoxicant (third offense), and alleging that he refused to submit to the breath test. Zivcic filed a pretrial motion seeking dismissal for lack of jurisdiction or to suppress evidence obtained as the result of an illegal arrest. The motion was denied.

On October 1, 1997, the refusal hearing was conducted, after which the trial court found Zivcic had improperly refused the breath test. The case proceeded to trial before a six-person jury in compliance with § 756.096(3)(am), STATS. Zivcic did not object to the six-person jury, did not request a twelve-person jury, and did not raise an issue as to whether the statute was unconstitutional.

The jury found Zivcic guilty. He now appeals.

## II.  DISCUSSION

*A.   Is Zivcic entitled to a new trial with a twelve-person jury?*

██

Zivcic claims that he is entitled to a new trial, this time with a twelve-person jury deciding his fate. His

argument is based on the *Hansford* decision, which held that the statute proscribing a six-person jury panel for misdemeanor cases violates the Wisconsin Constitution. *See Hansford*, 219 Wis. 2d at 245, 580 N.W.2d at 179. He contends that the *Hansford* ruling should be applied retroactively. We reject Zivcic's claim that he is entitled to a new trial before a twelve-person jury.

Whether *Hansford* should be applied retroactively is an issue of first impression. In addressing this question, we acknowledge that *State v. Koch*, 175 Wis. 2d 684, 499 N.W.2d 152 (1993) held that " 'a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.' " *Id.* at 694, 499 N.W.2d at 158 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987)). We note, however, that although the *Hansford* holding applies to all cases "pending on direct review," it applies only to those cases where the issue was raised before the trial court.

■

The rationale for requiring retroactive application to all cases pending on direct review was that to apply the new rule only to the fortunate case in which the issue was decided, would be unfair to all the other appellants who had similarly preserved the issue, but were not the first in the appellate queue. *See Griffith*, 479 U.S. at 323. The *Griffith* court explains the reasoning:

> As a practical matter, of course, we cannot hear each case pending on direct review and apply the new rule. But we fulfill our judicial responsibility by instructing the lower courts to apply the new rule

retroactively to cases not yet final. Thus, it is the nature of judicial review that precludes us from "[s]imply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new constitutional standards, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule."

*Id.* at 323 (quoted source omitted). To be a "similar" case, of course, the issue must have been preserved in the trial court—as it was in *Griffith*, 479 U.S. at 317, 319; *Koch*, 175 Wis. 2d at 692, 499 N.W.2d at 157 (preserving claim to which subsequently announced ruling by United States Supreme Court applied), and *Hansford*, 219 Wis. 2d at 232, 580 N.W.2d at 174. By seeking reversal and a new trial based on an argument that he did not make before the trial court, Zivcic seeks not parity with Hansford, Koch and Griffith, but an advantage that would ignore the general rule that, except for unusual circumstances, even constitutional issues must be raised in the trial court before they must be considered on appeal. *See State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501, 505 (1997).[2] Although undoubtedly there is some advantage to a defendant to have more rather than fewer jurors, because that increases the numerical chance for a hung jury, that

---

[2] One of the unusual circumstances justifying appellate relief, even though the issue was not raised before the trial court, is where the defendant has been convicted of a substantive crime that an appellate court later decides is beyond the legislature's constitutional power to create. *See State v. Benzel*, 220 Wis. 2d 588, 592–93, 583 N.W.2d 434, 436–37 (Ct. App. 1998). The instant case, however, is not such a case. Rather, to use the words of *Benzel*, this case concerns the application of a constitutional principle that "does not affect the basic accuracy of the factfinding process at trial." *Id.* at 592, 583 N.W.2d at 436.

advantage does not require overturning a fair, error-free trial on a ground that Zivcic did not raise before the trial court.

## B. Sheriff's Jurisdiction.

Zivcic also claims that Deputy Pauley did not have the legal authority to arrest him because the arrest occurred in the City of Greenfield. He argues that in order for the Milwaukee County Sheriff's Department to have jurisdiction, it would have had to comply with the requirements of § 175.40(5)(d), STATS.[3] We do not agree.

The Milwaukee County Sheriff's Department derives its territorial jurisdiction from § 59.28(1), STATS.: "Sheriffs and their undersheriffs and deputies

_____

[3] Section 175.40, STATS., which governs "Arrests; assistance" provides in part:

. . . .
(5)(a)  For any county having a population of 500,000 or more, if any law enforcement officer has territorial jurisdiction that is wholly or partially within that county and has authority to arrest a person within the officer's territorial jurisdiction, the officer may arrest that person anywhere in the county.

. . . .
(d)  In order to allow its officers to exercise authority under par. (a), a law enforcement agency for a municipality or county must adopt and implement written policies regarding the arrest authority under this subsection, including at least all of the following:
1.  Investigations conducted in another jurisdiction.
2.  Arrests made in another jurisdiction if the crime is observed by a law enforcement officer.
3.  Arrests made in another jurisdiction if the crime is not observed by a law enforcement officer.
4.  Notification to and cooperation with the law enforcement agency of another jurisdiction regarding investigations conducted and arrests made in the other jurisdiction.

shall keep and preserve the peace in their respective counties . . . ." Thus, this statute plainly states that the sheriff's department has general jurisdiction throughout Milwaukee County to issue citations, make arrests, and conduct other investigations that are necessary to preserve the peace within the county. It is undisputed that, although the arrest in the instant case occurred in the City of Greenfield, the City of Greenfield is in the County of Milwaukee. Thus, the sheriff's department does not need any additional authority to arrest a person within their territorial jurisdiction and, therefore, § 175.40(5)(d), STATS., is not applicable here.

## C. Admission of Expert Testimony.

Zivcic next argues that the trial court erred when it admitted certain expert testimony. Specifically, Zivcic objects to the testimony of Deputy Pauley regarding his administration of the HGN field sobriety test. Zivcic argues that Pauley was not properly qualified to proffer such testimony.

> A trial court's decision to admit or exclude expert testimony is a discretionary determination that is made pursuant to Rule 901.04(1), Stats. The decision will not be upset on appeal if it has "a reasonable basis" and was made " 'in accordance with accepted legal standards and in accordance with the facts of record.' " A determination of whether a proffered expert witness should be permitted to testify requires an evaluation of whether the testimony will "assist" the jury. Generally, expert testimony will assist the jury when the issue to be decided requires an analysis that would be difficult for the ordinary person in the community.

*State v. Blair*, 164 Wis. 2d 64, 74–75, 473 N.W.2d 566, 571 (Ct. App. 1991) (citations omitted). Based on this

127

standard of review, we conclude that the trial court did not erroneously exercise its discretion when it allowed Deputy Pauley to offer expert testimony on the HGN sobriety test. The record reflects that Deputy Pauley testified that he was trained in administering and evaluating the test. Thus, there was a reasonable basis for the trial court to conclude that he was qualified, pursuant to § 907.02, STATS., to offer the expert opinion regarding the HGN sobriety test.

Because there is evidence to support the trial court's finding that Deputy Pauley qualified as an expert witness, we also reject Zivcic's argument that there was an insufficient foundation to admit the results of the HGN test. In support of his argument, Zivcic cites a foreign case where a court ruled that the HGN test should not be admitted unless accompanied by "testimony from an expert with specialized knowledge and training in HGN testing and its underlying principles," *State v. Ruthardt*, 680 A.2d 349, 362 (Del. 1996). Although we are not bound by rulings in foreign jurisdictions, we conclude that the HGN test results are admissible under the cited authority because the instant case did not involve admission of the HGN test results in isolation. The results were accompanied by the expert testimony of Deputy Pauley who was trained in administering the test and evaluating the results.

To the extent that Zivcic argues that a second expert witness, in addition to the law enforcement officer, is required to testify before the HGN test results may be admitted, we cannot agree. As long as the HGN test results are accompanied by the testimony of a law enforcement officer who is properly trained to administer and evaluate the test, the mandates of § 907.02, STATS., are satisfied. As such, we are

more persuaded by the line of foreign cases cited by the State, indicating other jurisdictions have reached similar conclusions. *See State v. Murphy*, 451 N.W.2d 154, 158 (Iowa 1990); *State v. Berger*, 551 N.W.2d 421, 424 (Mich. Ct. App. 1996); *State v. Bresson*, 554 N.E.2d. 1330, 1334 (Ohio 1990).

Accordingly, we conclude, on this issue of first impression, that the trial court did not erroneously exercise its discretion in ruling there was a sufficient foundation to qualify Deputy Pauley as an expert witness and admit his testimony regarding the HGN test.

*D. Admission of "Deficient Sample" Record.*

Zivcic's last argument is that the trial court erroneously exercised its discretion in admitting the "deficient sample" printout from the Intoxilyzer 5000 test record card. He argues that the admission of this document was directly contrary to the rule announced in *State v. Grade*, 165 Wis. 2d 143, 477 N.W.2d 315 (Ct. App. 1991), and in violation of the hearsay rule. In admitting this evidence, the trial court ruled that the "deficient sample" document was not a "test result" and, therefore, the *Grade* rule did not apply.

An appellate court reviews a trial court's evidentiary rulings according to the erroneous exercise of discretion standard. *See State v. Pharr*, 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). If a trial court applies the proper law to the established facts, we will not find a misuse of discretion if there is any reasonable basis for the trial court's ruling. *See State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426, 428 (1982). We conclude that the trial court did not erroneously exercise its discretion in admitting this evidence.

129

Zivcic's argument is based on § 343.305(6)(c), STATS., which sets forth requirements as to the proper administration of breath tests. Specifically, the statute requires a breath test to consist of two samples in a specified sequence. *See id.* We addressed the admissibility of these tests in *Grade*, ruling that:

> If there are not two samples or the sequence is not followed, then there is no "test" within the meaning of the statute. If there is no "test" within the meaning of the statute, then there are no test results available to be admitted into evidence. The person who fails to give a complete breath test is considered to have refused consent . . . .

*Id.* at 149, 477 N.W.2d at 317. It is undisputed that Zivcic failed to adequately perform the breath test. As a result, a "deficient sample" resulted, because Zivcic failed to blow sufficiently hard or long enough to register a reading on the Intoxilyzer. Zivcic argues that because there was no "test," there is nothing that can be admitted. We disagree.

■

The "deficient sample" printout was not admitted into evidence as a *test result*. It does not in any way reflect whether or not Zivcic was intoxicated. Rather, the "deficient sample" printout is evidence of Zivcic's failure to provide two adequate breath samples, which constitutes a refusal under the statute. *See* § 343.305(6)(c)3, STATS. Deputy Szibel testified as to his first-hand observations regarding Zivcic's failure to provide two adequate breath samples. The "deficient sample" printout was used to corroborate this testimony. Thus, the document was not a test result and, therefore, *Grade* does not prohibit its admission.

Finally, we are not persuaded by Zivcic's claim that the document should have been excluded because it was hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Section 908.01(3), STATS. A "declarant" is "a person who makes a statement." Section 908.01(2), STATS. The Intoxilyzer which produced the "deficient sample" printout is not a declarant. Rather, the printout is the result of a process. Accordingly, the trial court did not erroneously exercise its discretion in admitting the challenged document.

*By the Court.*—Judgment and order affirmed.