STATE of Wisconsin, Plaintiff-Respondent,

v.

Jesse FRANKLIN, Defendant-Appellant-Petitioner.
[Case No. 99–0743–CR]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeffrey A. HUCK, Defendant-Appellant-Petitioner.
[Case Nos. 99–1282–CR, 99–1283–CR, 99–1284–CR,
99–1285–CR, 99–1286–CR, 99–1287–CR]

Supreme Court

*Nos. 99–0743–CR, 99–1282–CR, 99–1283–CR, 99–1284–CR,
99–1285–CR, 99–1286–CR, 99–1287–CR. Oral argument May
31, 2001.—Decided July 11, 2001.*

2001 WI 104

(Also reported in 629 N.W.2d 289.)

For the defendants-appellants-petitioners there were briefs and oral argument by *Richard D. Martin*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. WILLIAM A. BABLITCH, J. Defendants Jesse Franklin and Jeffery Huck seek review of two court of appeals' decisions in which the court denied the defendants' claims of ineffective assistance of counsel. The defendants were convicted in separate trials on misdemeanor counts by six-person juries. Both defendants argue that they received ineffective assistance because their trial attorneys failed to object to the six-person juries, even though around the time of their trials the court of appeals certified *State v. Hansford*, 219 Wis. 2d 226, 580 N.W.2d 171 (1998) to this court and we accepted this certification. The certified issue in

*Hansford* was whether Wis. Stat. § 756.096(3)(am) (1995–96),[1] the statute authorizing six-person juries, was constitutional.

¶ 2. We conclude that the defendants did not receive ineffective assistance because they have failed to show prejudice as required under *Strickland v. Washington*, 466 U.S. 668 (1984). Accordingly, we affirm the decisions by the court of appeals.

I

¶ 3. Franklin was convicted of four misdemeanors in two separate trials. One trial occurred on January 14–16, 1998, and the other occurred on May 14–15, 1998. Both trials were conducted in Milwaukee County Circuit Court before six-person juries. Franklin did not object to being tried by a six-person jury in either instance.

¶ 4. Huck was likewise tried by a six-person jury on several misdemeanor counts in Milwaukee County Circuit Court. His trial, which occurred on March 17–19, 1998, resulted in convictions on 11 counts of violating a domestic abuse injunction, two counts of criminal damage to property, and six counts of bail jumping. Like Franklin, Huck also did not object to being tried by a six-person jury.

---

[1] Wisconsin Stat. § 756.096(3)(am) (1995–96) provided that "[a] jury in misdemeanor cases shall consist of 6 persons." The legislature enacted Wis. Stat. § 756.096(3)(am) pursuant to 1995 Wisconsin Act 427. This statute was later repealed by Supreme Court Order 96–08, effective July 1, 1997; however, pursuant to this order, the language providing for six-person juries in misdemeanor cases was recreated under Wis. Stat. § 756.06(2)(am) (1997–98), also effective July 1, 1997. *See* S.Ct. Order 96–08, 207 Wis. 2d xv, xxiv-xxv.

¶ 5. Both defendants filed post-conviction motions requesting new trials. These motions alleged in part that they were entitled to new trials because they had been denied their constitutional right to a trial by jury of 12 persons and because their trial attorneys had rendered ineffective assistance of counsel by failing to object to juries of fewer than 12 persons.

¶ 6. Both defendants were denied relief by the circuit court. In Franklin's case, the circuit court simply denied his motion as untimely. In Huck's case, in response to his motion alleging ineffective assistance, the circuit court held a hearing pursuant to *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979) and took trial counsel's testimony regarding the absence of an objection to a six-person jury. After the hearing, the court denied the motion, concluding that Huck failed to prove prejudice to support his claim.

¶ 7. On appeal, the defendants again alleged that their trial attorneys were ineffective for failing to object to the six-person juries at their trials. More specifically, they asserted that their attorneys were ineffective for failing to be aware of the court of appeals' certification of *Hansford* to this court and for failing to offer it in support of a request for trial by a jury of 12. The court of appeals certified *Hansford* to us on December 11, 1997. The issue on certification was "whether Wis. Stat. § 756.096(3)(am), which provides for six-person juries in criminal misdemeanor cases, violates art. I, § 7 or art. I, § 5 of the Wisconsin Constitution." *See Hansford*, 219 Wis. 2d at 229 (footnotes omitted). We accepted certification of this issue on January 23, 1998, and issued a decision on June 19, 1998, finding the statute unconstitutional.

¶ 8. In Franklin's case, the court of appeals, in a one-judge decision, affirmed the circuit court's judg-

ments of conviction and order denying Franklin's motion for post-conviction relief. In particular, with respect to his claim for ineffective assistance, the court concluded that Franklin was not entitled to relief because he had failed to allege any error that was committed in the fact-finding process at trial and failed to prove that he suffered any prejudice resulting from his six-person jury trials. The court admitted that it was conceivable that Franklin's chances for acquittal or hung juries may have been greater with 12 jurors than with six. However, the court stated that this assertion was speculative at best and was insufficient to establish prejudice.

¶ 9. The court of appeals also issued a one-judge decision in Huck's case, affirming the circuit court's judgments of conviction and orders denying post-conviction relief. With respect to Huck's ineffective assistance claim, the court held that, because the statute authorizing six-person juries was still good law at the time that Huck was tried, the failure of Huck's counsel to raise the issue at trial did not constitute deficient performance by counsel. Therefore, no claim for ineffective assistance could be established.

¶ 10. We are presented with one issue on review: whether the misdemeanants in these consolidated cases were denied the right to effective assistance of counsel when their attorneys failed to object to the six-person jury statute which was found unconstitutional in *Hansford*. We conclude that, because the defendants have failed to prove that any deficient performance prejudiced their defense, the defendants have failed to prove that they were denied effective assistance of counsel. As a result, we affirm the decisions of the court of appeals.

587

## II

¶ 11. For ineffective assistance of counsel claims, this state has adopted the analysis from *Strickland*, 466 U.S. 668. In *Strickland*, the United States Supreme Court noted that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. To this end, the Court developed a two-pronged test to determine whether the assistance was so defective that reversal of conviction is required. *Id.* at 687. Under this test, a defendant must show (1) that his or her counsel's representation was deficient and (2) that this deficient performance resulted in prejudice to the defense. *Id.*

¶ 12. A claim of ineffective assistance of counsel presents a mixed question of fact and law. *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be overturned on appeal unless they are clearly erroneous. *Id.* Whether the trial counsel's conduct was deficient and whether it was prejudicial to the defendant are questions of law reviewed by this court de novo. *Id.*; *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985).

¶ 13. Under the deficient performance prong, we examine whether "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The defendants assert that the performances of their attorneys fell below this standard because their attorneys knew or should have known of the court of appeals' certification of *Hansford* to this court and should have objected to six-person juries in light of this knowledge. We, however, need not address

this issue because, even if the attorneys had performed deficiently, the defendants cannot prove prejudice under the second prong of the *Strickland* analysis. *See Strickland*, 466 U.S. at 697 (a court need not address both components of the inquiry if the defendant makes an insufficient showing on one).

¶ 14. To prove prejudice, a defendant is required to show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.* at 694. Under this test, a defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. However, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* The defendant's burden is to show that counsel's errors "actually had an adverse effect on the defense." *Id.*

¶ 15. Applying this test, we conclude that the defendants have failed to prove prejudice. In particular, the defendants have not shown that, but for their attorney's failure to object, there was a reasonable probability for a different result in their cases. A six-person jury in and of itself is an insufficient basis for us to conclude that the defendants were deprived of a fair trial whose result is reliable. In *State v. Huebner*, 2000 WI 59, ¶¶ 17–19, 31, 235 Wis. 2d 486, 611 N.W.2d 727 (3–1–3 decision), it was stated that, in view of our holding in *Hansford*, a six-person jury does not

automatically render the trial invalid or affect the accuracy of the proceeding.

> Nothing in *Hansford* suggests that having a six-person jury trial is equivalent to having no jury trial at all. *Hansford* did not state that a six-person jury is procedurally unfair or that it is an inherently invalid factfinding mechanism. *Hansford* only held that a six-person jury trial is not consistent with the historical meaning of the right to a jury trial under art. I, § 7 of the Wisconsin Constitution. The court reached this conclusion based on a careful examination of the history of the Wisconsin Constitution and this court's longstanding interpretation of the right to trial by jury in art. I, §§ 5 and 7.

> We find nothing in *Hansford* to support the conclusion that the difference between a six-person jury trial and a twelve-person jury trial is so fundamental that a six-person jury trial, which was conducted without objection under the express authority of a statute, is automatically invalid.

> . . .

> The use of a six-person jury rather than a twelve-person jury did not undermine the fundamental integrity of Huebner's trial. Rather, "this case concerns the application of a constitutional principle that 'does not affect the basic accuracy of the factfinding process at trial.' "

*Id.* at ¶¶ 18–19, 31 (citations omitted). We affirm this interpretation of *Hansford* from *Huebner*. Indeed, our holding in *Hansford* was based on information from this state's constitutional conventions and our previous decisions which interpreted a criminal defendant's right to a trial by jury to mean the right to a jury of 12 persons. *Hansford*, 219 Wis. 2d at 234–43. Our holding, however, was never based on the notion that a jury of

less than 12 persons is fundamentally unfair or unjust to a defendant.

¶ 16.　While it is conceivable that the chances for acquittal or a hung jury would be greater in juries of 12 than in juries of six, this conclusion alone is insufficient to provide a basis for finding that there was a reasonable probability for a different result. We do not find any reason why six-person juries would undermine the confidence of an otherwise fair and error-free trial. Thus, beyond mere speculation, we cannot conclude that the six-person juries had an actual adverse effect on the defense in the defendants' cases, and therefore, the defendants are not entitled to a reversal of their convictions. *Cf. State v. Zivcic*, 229 Wis. 2d 119, 125, 598 N.W.2d 565 (Ct. App. 1999) (the court refused to overturn Zivcic's conviction based solely on the fact that he was tried and convicted by a six-person jury to which he did not object).

¶ 17.　The defendants argue, however, that prejudice should not be strictly defined according to *Strickland* in their cases. *Strickland*'s definition, they assert, cannot reach every situation where an attorney's ineffective assistance has prejudiced the defense. Instead, they contend that we should define prejudice according to whether their attorneys' deficient performances denied them a fundamental constitutional right that rendered their trials unfair. When viewed in this manner, they assert that prejudice was established when they were deprived of their right to a 12-person jury. This denial made the trial unfair because it gave the prosecution an advantage in proving its case to only six jurors instead of 12.

¶ 18.　The defendants' argument relies primarily on our holding in *State v. Smith*, 207 Wis. 2d 258, 558

N.W.2d 379 (1997).[2] In *Smith*, the prosecutor breached his plea agreement with Smith by recommending a sentence during Smith's sentencing hearing even though he had agreed not to make any such recommendation. *Id.* at 262. Smith argued that he received ineffective assistance because his attorney failed to object to the prosecutor's breach and this conduct resulted in prejudice to him. *Id.* at 268. Smith's prejudice argument, however, did not assert that, but for his attorney's deficient performance, a different result was probable. Instead, his argument alleged that he was prejudiced because he failed to receive the plea agreement promised to him by the State. *Id.* at 267–68. Smith asserted, however, that prejudice could be presumed in his case in light of his attorney's deficient performance. *Id.* at 264.

---

[2] The defendants also cite *State v. Ludwig*, 124 Wis. 2d 600, 369 N.W.2d 722 (1985), and *State v. Fritz*, 212 Wis. 2d 284, 569 N.W.2d 48 (Ct. App. 1997), to support their argument that the court may find prejudice without relying on the *Strickland*, "reasonable probability of a different result" standard. *Strickland v. Washington*, 466 U.S. 668 (1984). Similar to *State v. Smith*, 207 Wis. 2d 258, 558 N.W.2d 379 (1997), *Fritz* also involved an attorney's deficient performance (advising the defendant Fritz to commit perjury) resulting in the loss of a plea bargain. *Fritz* relied on *Smith* in concluding that Fritz did not have to demonstrate the probability of a different result to prove prejudice. *See Fritz*, 212 Wis. 2d at 297. In light of this reliance, we will not analyze this case separately.

*Ludwig* also involved an attorney's deficient performance (failing to inform the defendant Ludwig of a plea offer) resulting in the loss of a plea offer. We conclude, however, that *Ludwig* does not warrant separate analysis because we interpret its holding as consistent with the *Strickland* standard for prejudice. *See Ludwig*, 124 Wis. 2d at 609–12.

¶ 19. In examining Smith's arguments, we noted that the *Strickland* Court highlighted certain unique instances where a court must presume prejudice, stating:

> "In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for. the government to prevent."

*Id.* at 278 (quoting *Strickland*, 466 U.S. at 692). We then listed specific cases where either we or the United States Supreme Court have concluded that prejudice should be presumed. *Id.* at 278–80; *See also Erickson*, 227 Wis. 2d at 770–71 (describing three different categories in which the court presumes prejudice).

■

¶ 20. In our analysis in *Smith*, however, we never directly addressed whether such breaches of plea agreements were encompassed within one of the presumption categories. Instead, we concluded that prejudice automatically occurs in such cases based on *Santobello v. New York*, 404 U.S. 257 (1971), a case similar to Smith's case in which the prosecutor had also breached a plea agreement. *Smith*, 207 Wis. 2d at 281–82. In *Santobello*, the Court held that, based on the interests of justice and on the duty of a prosecutor to keep promises to a defendant, any breach would result in remand to the circuit court, either for specific

performance under the agreement or to permit the defendant to withdraw his plea. *Santobello*, 404 U.S. at 262–63. In *Smith*, we recognized *Santobello* as holding that a defendant has a substantive right to the prosecution's fulfillment of the terms of a plea agreement and that a breach, unobjected to by defense counsel, constituted a deprivation of that substantive right. *Smith*, 207 Wis. 2d at 278. Although *Santobello* was decided before *Strickland*, we noted that it relied on similar principles of fairness. *Id.* at 276.

¶ 21. In our conclusion in *Smith*, we stated as follows:

> [W]e conclude that when a prosecutor agrees to make no sentence recommendation but instead recommends a significant prison term, such conduct is a material and substantial breach of the plea agreement. Such a breach of the State's agreement on sentencing is a "manifest injustice" and always results in prejudice to the defendant. The breach of a material and substantial term of a plea agreement by the prosecutor deprives the defendant of a sentencing proceeding whose result is fair and reliable. Our conclusion precludes any need to consider what the sentencing judge would have done if the defense counsel had objected to the breach by the district attorney. Rather, our conclusion is premised on the rule of *Santobello*, that when a negotiated plea rests in any significant degree on a promise or agreement of the prosecutor, such promise must be fulfilled.

*Id.* at 281 (citations and footnote omitted). Thus, this case established a per se rule of prejudice in all instances where the prosecutor committed a material and substantial breach of the plea agreement. *Id.* at 282.

¶ 22. The defendants urge us to follow the holding in *Smith* and to conclude that the denial of a 12-person jury, without objection of counsel, is always prejudicial to defendants in ineffective assistance of counsel claims. They argue that, as in *Smith*, the interests of justice require such a holding because the defendants have been denied their right to a jury trial as required by *Hansford*. For several reasons, however, we conclude that such a finding of automatic prejudice is unwarranted in six-person jury cases.

¶ 23. First and foremost, as we noted above, six-person juries do not lead us to the conclusion that the result of the trial was automatically unfair or unreliable or that the fundamental integrity of the trial was undermined. Indeed, as in a prosecutor's breach of a plea agreement, the harmful effects of a six-person jury are difficult to measure. However, in contrast to a prosecutor's breach, six-person juries do not invoke interests of justice factors which require an automatic finding of prejudice. Breaches of plea agreements by prosecutors not only adversely affect the integrity of the proceeding and undermine the outcome, but also impair the defendant's and the public's faith in the fairness of the criminal justice system. We do not find anything inherent in a six-person jury that results in similar concerns.

¶ 24. Second, even assuming that the defendants were deprived of a specific right as a result of their attorneys' failure to object, the denial of a right does not automatically require us to presume prejudice or find actual prejudice. *Cf. Erickson*, 227 Wis. 2d at 769–74 (declining to presume or find actual prejudice even though the counsel's conduct effectively deprived the defendant of a statutorily-required right to per-

emptory challenges). Indeed, we have noted that prejudice will not result unless a counsel's deficient performance deprives the defendant of a substantive or procedural right. *Smith*, 207 Wis. 2d at 278. However, we have held that, when not falling within one of the three presumptions enumerated in *Strickland*, prejudice will only result when the counsel's errors have deprived the defendant of a fair trial whose result is reliable. *See, e.g., Erickson*, 227 Wis. 2d at 773–74; *Pitsch*, 124 Wis. 2d at 646. We have provided for only a few limited exceptions. *See, e.g., Smith*, 207 Wis. 2d at 271. The defendants have not proven that any errors committed by their attorneys lead to such prejudice.

¶ 25. Third and finally, none of the presumptions enumerated under *Strickland* apply. We defined these "rare" instances in *Erickson*, stating that a court will presume prejudice (1) "when the effective assistance of counsel has been eviscerated by forces unrelated to the actual performance of the defendant's attorney"; (2) "when, although the defendant is actually given counsel, 'the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate' "; or (3) when "[i]n other, more limited, circumstances the actual assistance rendered by a particular attorney has been deemed so outside the bounds necessary for effective counsel that a court has presumed prejudice." *Erickson*, 227 Wis. 2d at 770–71 (citation omitted). In short, the defendants' cases do not fit within any of these limited circumstances.

¶ 26. The defendants have clearly presented their claims as ineffective assistance in this case. We proceed under this claim and according to *Strickland*, regardless of the potential for other consequences if this case had been presented differently. *Cf. State v.*

*Damaske*, 212 Wis. 2d 169, 200, 567 N.W.2d 905 (Ct. App. 1997) ("[T]here is a significant distinction between the consequences on appeal of trial-court error and the consequences of that same error when it is raised in an ineffective-assistance-of-counsel context."). Under *Strickland*, we conclude prejudice has not been proven.

## III

¶ 27. In sum, we conclude that the defendants have not established claims for ineffective assistance of counsel because they have failed to show prejudice as required under *Strickland*. Accordingly, we affirm the court of appeals' decisions. The defendants are not entitled to reversals of their convictions.

*By the Court.*—The decisions of the court of appeals are affirmed.

¶ 28. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. How a court states the question presented in a case often determines the response. But in the present cases, no matter how the question is stated, the response is the same.

¶ 29. The majority opinion states the question presented in these cases as follows: Did the defendants receive ineffective assistance of counsel because their trial attorneys failed to object to six-person juries, even though around the time of their trials this court had accepted certification of *State v. Hansford*,[1] challenging the constitutionality of the statute authorizing six-person juries? The majority opinion responds "no."

[1] *State v. Hansford*, 219 Wis. 2d 226, 580 N.W.2d 171 (1998).

Why? Because, according to the majority opinion, the defendants failed to show prejudice: the defendants received a fair, impartial trial by a jury of six persons.

¶ 30. However, I respond "yes." Why? Because, according to our past cases, when a criminal accused requests a jury trial, a jury of any number other than 12 persons is a denial of a fundamental right guaranteed by the Wisconsin Constitution.[2] Failure to accord an accused a jury of 12 persons is prejudicial per se.[3] According to Wis. Stat. § 972.02(1) (1999–2000), only the defendant can waive a 12-person jury and only by a personal and affirmative statement in open court. Because the defendants in the present cases did not waive their right to a 12-person jury in the manner set forth in § 972.02(1), the defendants are entitled to a new trial even when they did not preserve the error by objecting in the circuit court.

¶ 31. As I see it, here are the top 20 relevant questions to be asked and answered in the present cases.

¶ 32. **Question 1:** Did each defendant in the present cases demand a jury trial?

¶ 33. **Answer:** Yes.

¶ 34. **Question 2:** How many jurors sat on each jury?

¶ 35. **Answer:** Six.

¶ 36. **Question 3:** Did the defendants in the present cases personally and affirmatively agree to a jury of fewer than 12 persons?

¶ 37. **Answer:** No.

---

[2] *Hansford*, 219 Wis. 2d at 230.

[3] *State v. Wingo*, 2000 WI 31, ¶¶ 2, 18, 233 Wis. 2d 467, 609 N.W.2d 162; *Hansford*, 219 Wis. 2d at 243; *State v. Cooley*, 105 Wis. 2d 642, 645–46, 315 N.W.2d 369 (Ct. App. 1981).

¶ 38. **Question 4:** Did defense counsel in the present cases personally and affirmatively agree to a jury of fewer than 12 persons?

¶ 39. **Answer:** No.

¶ 40. **Question 5:** Did defense counsel or the defendants in the present cases object at trial to a jury of fewer than 12 persons?

¶ 41. **Answer:** No.

¶ 42. **Question 6:** Why was a six-person jury used in each of the present cases?

¶ 43. **Answer:** Both counsel and the circuit courts assumed that the statute authorizing a six-person jury was constitutional and in effect.[4]

¶ 44. **Question 7:** Does a jury of fewer than 12 persons in a criminal case satisfy the right to jury trial guaranteed by the Wisconsin Constitution?

¶ 45. **Answer:** No. According to *State v. Hansford*, 219 Wis. 2d 226, 241, 580 N.W.2d 171 (1998), "a criminal defendant's right to a trial by jury as guaranteed by art. I, § 7 of the Wisconsin Constitution, is the right to a jury of 12 persons."

¶ 46. **Question 8:** Does the state constitutional right to trial by jury in a criminal case mean only a jury of 12 persons, not a lesser or greater number?

¶ 47. **Answer:** Yes. See the *Hansford* case cited in the answer to question 7 and the cases cited in answer to question 13.

¶ 48. **Question 9:** Can a jury of any number other than 12 persons ever render a valid verdict in a criminal case in Wisconsin?

¶ 49. **Answer:** Yes.

¶ 50. **Question 10:** When?

---

[4] Wis. Stat. § 756.096(3)(am) (1995–96).

¶ 51. **Answer:** When an accused agrees personally and affirmatively on the record in accordance with Wis. Stat. § 972.02(1) to a jury of a number other than 12 persons.[5]

¶ 52. **Question 11:** Can an accused be deemed to agree to a jury of any number other than 12 persons by silence or by inference from the record?

¶ 53. **Answer:** No. A waiver of a 12-person jury must be by the accused personally and on the record. Waiver will not be presumed.[6] "Neither circumstantial evidence nor reasonable inference will support a waiver."[7]

---

[5] Wisconsin Stat. § 972.02(1) (1999–2000) provides that "[e]xcept as otherwise provided in this chapter, criminal cases shall be tried by a jury selected as prescribed in s. 805.08, unless the defendant waives a jury in writing or by statement in open court or under s. 967.08(2)(b), on the record, with the approval of the court and the consent of the state."

In *State v. Albright*, 96 Wis. 2d 122, 129–30, 291 N.W.2d 487 (1980), the court concluded that "certain constitutional rights of a criminal defendant are so fundamental that they are deemed to be personal rights which must be waived personally by the defendant. In this category of personal rights is found the decision. . .whether to request a trial by jury. . . " (citation omitted).

In the *Ledger* case, the prosecutor and defense counsel mutually agreed to allow a 13-person jury to deliberate and render a verdict. The accused agreed to this arrangement in person and affirmatively on the record; on appellate review he did not challenge the sufficiency of the colloquy or the waiver. The court of appeals concluded that no constitutional impediment existed. *State v. Ledger*, 175 Wis. 2d 116, 126, 499 N.W.2d 198 (Ct. App. 1993).

[6] *State v. Cleveland*, 50 Wis. 2d 666, 670, 184 N.W.2d 899 (1971).

[7] *State v. Cleveland*, 50 Wis. 2d at 670.

¶ 54. **Question 12:** If defense counsel agrees to a jury of fewer than or more than 12 persons, is that good enough to waive a 12-person jury?

¶ 55. **Answer:** No. This court has held that neither counsel nor the court nor any other entity can act in any way or to any degree so as to waive on the accused's behalf his or her right to trial by a jury of 12 persons.[8] "[T]he defendant's personal waiver. . .may not be inferred or presumed."[9]

¶ 56. **Question 13:** What remedy is afforded a criminal accused who asks for a jury trial and then is tried, without objection by the accused or defense counsel, by a jury of other than 12 persons or is tried by the court without a jury?

¶ 57. **Answer:** A new trial. Thus when defense counsel in the *Cooley* case agreed to proceed in a criminal trial with an 11-member jury, the court of appeals concluded that because the accused did not personally and affirmatively agree to a jury of fewer than 12 persons, a new trial must be ordered.[10]

¶ 58. In the *Cleveland* case, when an accused demanded a jury trial and was then tried by the court (a "zero-person" jury) without any objection by the accused, the supreme court held that the right to a jury trial was violated and "there must be an automatic reversal of conviction."[11]

---

[8] *State v. Livingston*, 159 Wis. 2d 561, 569, 464 N.W.2d 839 (1991).

[9] *State v. Livingston*, 159 Wis. 2d at 569–70.

[10] *State v. Cooley*, 105 Wis. 2d at 645–46 (cited with approval *State v. Livingston*, 159 Wis. 2d at 569, 574).

[11] *State v. Cleveland*, 50 Wis. 2d at 670 (a jury waiver must be on the record; it will not be presumed).

¶ 59. In a third case, *Wingo*,[12] the accused was tried by a six-person jury because counsel and the circuit court mistakenly believed that Wis. Stat. § 756.096(3)(am) (1995–96) authorizing a six-person jury was in effect. Neither the defendant nor defense counsel objected to the six-person jury. Neither the defendant nor defense counsel personally and affirmatively waived the accused's right to trial by a 12-person jury. The accused asserted ineffective assistance of counsel. Ignoring the ineffective assistance of counsel argument, the court concluded that the parties' failure to comply with the statutory requirements of waiving a 12-person jury denied the accused a jury of 12 persons guaranteed under Wisconsin law. The *Wingo* court reversed the conviction and ordered a new trial because the accused had been denied a trial by a jury of 12 persons.

¶ 60. Thus, to answer question 13, the proper remedy when an accused has not personally and affirmatively waived a trial by a 12-person jury is a "reversal and remand for a new trial," even when the defendant does not raise the issue until after the trial.[13]

¶ 61. Although the defendants in the three cases described above received a fair and impartial trial by a jury of 11 persons, by the court, or by a jury of six persons, respectively, the appellate court ordered a new trial in each instance on the ground that the defen-

---

[12] *State v. Wingo*, 2000 WI 31, 233 Wis. 2d 467, 609 N.W.2d 162.

[13] "[W]here the defendant has been denied the right to a jury trial or an appropriate personal waiver thereof, we have no alternative other than to remand for a new jury trial or the personal, informed waiver by the defendant of such right." *State v. Livingston*, 159 Wis. 2d at 575.

dant did not personally and affirmatively waive a jury of 12 persons.

¶ 62. **Question 14:** Why did defense counsel and counsel for the State in the present cases debate the validity of the convictions on the basis of ineffective assistance of counsel when none of the above cases was decided on that basis?

¶ 63. **Answer:** Because, as defense counsel and counsel for the State explained at oral argument, counsel concluded that the ineffective assistance of counsel argument was the only route available after *State v. Huebner*, 2000 WI 59, 235 Wis. 2d 486, 611 N.W.2d 727, by which to challenge a six-person jury.[14] Counsel had concluded that it was useless for them to argue to this court the merits of reversing the *Huebner* decision, which was less than a year old. Thus counsel for both the defense and state framed this case as presenting the question of ineffective assistance of counsel.

¶ 64. **Question 15**: What does the *Huebner* decision hold?

¶ 65. **Answer:** The only *Huebner* holding is that Huebner's conviction was affirmed. In concluding that *Huebner* stands for any rule of law, counsel erred in counting the justices' votes. *Huebner* was a 4–to–3 decision on the mandate, but it was a 1–3–3 decision on the reasoning.

¶ 66. In *Huebner*, four justices agreed to affirm the conviction rendered by a six-person jury. One of the four justices, Justice Prosser, asserted that a six-person jury was constitutional. Three of the four justices agreed that a six-person jury was unconstitutional, but they concluded that a defendant who did not object to

---

[14] The court explicitly stated in *Huebner* that it was not addressing the issue of ineffective assistance of counsel. *State v. Huebner*, 2000 WI 59, ¶ 18, 235 Wis. 2d 486, 611 N.W.2d 727.

the use of a six-person jury at a misdemeanor trial, as authorized by Wis. Stat. § 756.096(3)(am) (1995–96) (declared unconstitutional in *Hansford*), may not obtain a new trial. Three other justices agreed that a six-person jury was unconstitutional, but they concluded that a verdict rendered by a six-person jury to which Huebner did not consent was invalid and that a new trial should be ordered.

¶ 67. Although only a careful reader would spot it, when the majority opinion in the present case refers to the *Huebner* opinion,[15] the majority opinion is referring to what three justices of the court opined in *Huebner*. *Huebner* is not precedent.

¶ 68. **Question 16:** Was there ineffective assistance of counsel in the present cases?

¶ 69. **Answer:** There is no need to ask or answer this question in light of Wis. Stat. § 972.02(1) (1999–2000) and the case law. For example, in *Wingo*, after trial the accused sought a new trial, arguing his trial counsel was ineffective in failing to challenge the six-person jury. Ignoring the ineffective assistance of counsel argument, the *Wingo* court concluded that the parties' failure to comply with the statutory requirements of Wis. Stat. § 972.02(1) governing waiving a 12-person jury required a reversal of the conviction and a new trial.[16]

¶ 70. **Question 17:** Let's test out the ineffective assistance of counsel argument anyway. What about the prejudice prong of the *Strickland*[17] test for ineffective assistance of counsel?

---

[15] *See* majority op. at ¶ 15.

[16] *See State v. Wingo*, 2001 WI 31 at ¶¶ 2, 18; *see also State v. Livingston*, 159 Wis. 2d at 573; *State v. Cooley*, 105 Wis. 2d at 645–46.

[17] *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 71. **Answer:** This court has consistently held that it is prejudicial per se for an accused to be denied a trial by jury. That the accused had a fair and impartial trial by fewer than 12 persons[18] or by a court without a jury is irrelevant.[19] The accused did not get his constitutionally guaranteed right of a 12-person jury. Denial of this constitutionally guaranteed right is not harmless error.

¶ 72. As early as 1971 in *Cleveland*, this court stated that "[t]he right to a jury trial is fundamental. Sound public policy demands that when that right is violated [by the defendant's failure to waive the right to a jury trial on the record] there must be an automatic reversal of conviction."[20]

¶ 73. In *Hansford* the accused had a six-person jury to which he objected. The supreme court held that the circuit court erred in not granting the accused a 12-person jury. The *Hansford* court did not apply the harmless error test to hold that the accused had a fair trial with a six-person jury. Rather the *Hansford* court stated emphatically that "[b]ecause the defendant was not afforded the right to a jury of 12 persons, as guaranteed by art. I, § 7 of the Wisconsin Constitution, his conviction for obstructing an officer *must* be reversed and the cause remanded to the circuit court."[21]

¶ 74. Ignoring the *Hansford* case (and the prior cases), the majority opinion now applies a harmless error test to a six-person jury but fails to explain why

---

[18] *State v. Wingo*, 2000 WI 31; *State v. Cooley*, 105 Wis. 2d at 642.

[19] *State v. Cleveland*, 50 Wis. 2d 666.

[20] *State v. Cleveland*, 50 Wis. 2d at 670.

[21] *Hansford*, 219 Wis. 2d at 243 (emphasis added).

*Hansford* reversed a conviction if the error of a trial by a six-person jury was harmless.[22]

¶ 75. **Question 18:** What about the deficient performance prong of the *Strickland* test for ineffective assistance of counsel?

¶ 76. **Answer:** Because the error in conducting a trial with a jury of fewer than 12 persons without an accused's personal and affirmative consent is prejudicial per se under our case law, there is no need to analyze the deficient performance prong.

¶ 77. **Question 19:** What is the proper remedy in this case?

¶ 78. **Answer:** A new trial. In each of the cases described above, when the accused did not receive a jury of 12 persons and did not personally and affirmatively agree to a trial conducted without a jury of 12 persons, the accused got a new trial.

¶ 79. **Question 20:** Which justices are joining this dissent?

¶ 80. **Answer:** I am authorized to state that Justices ANN WALSH BRADLEY and DIANE S. SYKES join this dissent.

¶ 81. For the reasons set forth, I dissent.

---

---

[22] *See* majority op. at ¶ 15.